No. 72,429

RESOLUTION TRUST CORPORATION, *Plaintiff*, v. ERNEST M. FLEISCHER, *et al.*, *Defendants*.

(892 P.2d 497)

Opinion filed March 17, 1995.

*R. Kent Sellers*, of Gage & Tucker L.C., of Kansas City, Missouri, argued the cause, and *Bernard J. Rhodes,* of the same firm, *H. David Barr*, of the same firm, of Overland Park, and *Robert H. Plotkin*, of Resolution Trust Corporation, of Washington, D.C., were with him on the brief for plaintiff.

*Brant M. Laue*, of Rouse, Hendricks, German, May & Shank, P.C., of Kansas City, Missouri, argued the cause, and *Charles W. German*, of the same firm, and *James Borthwick* and *Michael Thompson*, of Blackwell Sanders Matheny Weary & Lombardi, of Kansas City, Missouri, were with him on the brief for defendants.

*Charles N. Henson*, of Wright, Henson, Somers, Sebelius, Clark & Baker, LLP, of Topeka, was on the brief for *amicus curiae* Kansas Bankers Association.

The opinion of the court was delivered by

SIX, J.: The case concerns the constitutionality of retroactive legislation which affects accrued tort actions. The Resolution Trust Corporation (RTC) has asserted state law claims of negli-

gence and breach of fiduciary duty against former officers and directors of Franklin Savings Association (Franklin) of Ottawa, Kansas. The case is proceeding in federal district court. The Hon. John W. Lungstrum of the United States District Court for the District of Kansas certifies the following questions:

"(1) Under Kansas law, does the holder of accrued tort actions for negligence and breach of fiduciary duty, which have not yet been reduced to judgment, have a vested property right in those causes of action?

"(2) Is S.B. 762 [K.S.A. 1994 Supp. 9-1133 and K.S.A. 1994 Supp. 9-1134], which makes K.S.A. [1994 Supp.] 17-5831 retroactive, unconstitutional under the constitution of the State of Kansas when applied to claims which accrued prior to its enactment?"

Our jurisdiction is under K.S.A. 60-3201, the Uniform Certification of Questions of Law Act. We answer both questions in the affirmative, limiting our answers to the facts presented.

## FACTS

The RTC and Franklin have been opposing litigants for five years. On February 15, 1990, the RTC was appointed conservator. The conservatorship was vigorously contested, initially denied, but eventually approved in *Franklin Sav. v. Office of Thrift Supervision*, 742 F. Supp. 1089 (D. Kan. 1990), *rev'd* 934 F.2d 1127 (10th Cir. 1991), *cert. denied* 117 L. Ed. 2d 619 (1992). The conservatorship was later converted to a receivership. See *Franklin Sav. Ass'n v. OTS*, 821 F. Supp. 1414 (D. Kan. 1993), *aff'd* 35 F.3d 1466 (10th Cir. 1994).

On February 12, 1993, the RTC filed the instant civil action against a number of former Franklin directors. The district court has published three opinions in connection with the case. See *Resolution Trust Corp. v. Fleischer*, 848 F. Supp. 917 (D. Kan. 1994) (motion for partial summary judgment); *Resolution Trust Corp. v. Fleischer*, 835 F. Supp. 1318 (D. Kan. 1993) (motion to strike affirmative defenses); *Resolution Trust Corp. v. Fleischer*, 826 F. Supp. 1273 (D. Kan. 1993) (motion to dismiss all claims).

The district court provides the following facts:

"This case involves a suit brought by plaintiff RTC alleging various causes of action against former directors and officers of [Franklin]. The claims asserted by the RTC against the defendants are various state law causes of action arising

out of a series of transactions involving tax-exempt revenue bonds known as credit-enhancement projects and alleged losses sustained through various broker-dealer subsidiaries of [Franklin]. *All of the RTC's state law claims are based on theories of simple negligence or negligent breach of fiduciary duty. The RTC does not allege any breach of the duty of loyalty, any willful or wanton or grossly negligent breach of the duty of care, any criminal violation of the Kansas savings and loan code, or any improper personal benefit from any transaction.* All of the RTC's claims arise from actions taken by defendants prior to the time the RTC was appointed conservator on February 15, 1990." (Emphasis added.)

During its 1993 session, the Kansas Legislature passed a law limiting potential personal liability for certain officers and directors of savings and loan associations. Now codified at K.S.A. 1994 Supp. 17-5831, the law, which took effect May 20, 1993, provides:

"Except for persons who are executive officers, an officer or director of a savings and loan association, federal savings association or federal savings bank shall have no personal liability to the savings and loan association, federal savings association or federal savings bank or its members or stockholders for monetary damages for breach of duty as an officer or director, except that such liability shall not be eliminated for: (a) Any breach of the officer's or director's duty of loyalty to the association or bank, its members or stockholders; (b) acts or omissions which constitute willful or gross and wanton negligent breach of the officer's or director's duty of care; (c) acts in violation of K.S.A. 17-5412, 17-5811 and 17-5812 and amendments thereto; or (d) any transaction from which the officer or director derived an improper personal benefit. For purposes of this section, 'executive officer' means the chairperson of the board, the president, each vice president, the cashier, the secretary and the treasurer of a savings and loan association, federal savings association or federal savings bank, unless such officer is excluded by resolution of the board of directors or by the bylaws of the savings and loan association, federal savings association or federal savings bank from participation in the policymaking functions of the savings and loan association, federal savings association or federal savings bank, and the officer does not actually participate in the policymaking functions of the savings and loan association, federal savings association or federal savings bank."

From reading the definition of "executive officer" in 17-5831, it appears that the legislature's aim was to provide greater protection from personal liability to individuals commonly referred to as "outside" directors or officers. In 17-5831, the legislature essentially overruled the existing common law in Kansas under which "outside" directors of savings and loan associations could be held liable for negligence and breach of fiduciary duty. See *Wichita Fed'l Savings & Loan Ass'n v. Black*, 245 Kan. 523, 530, 781 P.2d

707 (1989); *Federal Savings & Loan Ins. Corp. v. Huff*, 237 Kan. 873, 704 P.2d 372 (1985).

In 1994, largely in response to several RTC civil actions filed against former officers and directors, including the present one, which were pending when 17-5831 took effect, the legislature was encouraged to make 17-5831 retroactive. Judiciary Committee members heard testimony from former savings and loan directors suffering financial and personal hardships resulting from defending the RTC actions. An attorney for several Franklin defendants, in fact, urged the legislature to "put a stop" to the RTC's pending negligence suits against outside directors by making 17-5831 retroactive.

The legislature responded by passing S.B. 762, which made 17-5831 applicable to any action that had not been finally adjudicated when 17-5831 took effect on May 20, 1993.

S.B. 762, now codified at K.S.A. 1994 Supp. 9-1133 and K.S.A. 1994 Supp. 9-1134, states in pertinent part:

"Section 1. The provisions of . . . 17-5831 and amendments thereto apply to an action brought against a director or officer of an insured depository institution, regardless of whether the action was filed before, on, or after May 20, 1993, unless the action was finally adjudicated before May 20, 1993. The provisions of this section shall not apply to executive officers as defined in . . . 17-5831 and amendments thereto."

The district court has noted that if S.B. 762 survives constitutional challenge, it eliminates most of the RTC's claims in the federal case.

Several Franklin defendants moved for summary judgment in reliance on S.B. 762. The RTC countered by claiming it has a vested property right under Kansas law in its accrued tort causes of action. Applying 17-5831 retroactively would amount to a taking of property without due process in violation of the United States Constitution. Reviewing Kansas law, the district court found "no clear pronouncements" on whether an accrued tort cause of action is considered a vested property right. Sampling other jurisdictions, the district court observed a split of authority; consequently, question one was certified to this court.

The RTC further contended that a retroactive application of 17-5381 would violate the Kansas Constitution, particularly § 18

of the Bill of Rights. The district court also found the § 18 cases in Kansas to be unclear, and certified question two.

## DISCUSSION

### Question One:

**Under Kansas law, does the holder of accrued tort actions for negligence and breach of fiduciary duty, which have not yet been reduced to judgment, have a vested property right in those causes of action?**

We have stated: "The right to a cause of action has long been held to be a protected property interest." *Harrison v. Long*, 241 Kan. 174, 179, 734 P.2d 1155 (1987). Likewise, we observe that the United States Supreme Court has suggested that accrued causes of action are a "species of 'property' protected by the Fourteenth Amendment's Due Process Clause." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 71 L. Ed. 2d 265, 102 S. Ct. 1148 (1982) (state statutory discrimination claim); *Martinez v. California*, 444 U.S. 277, 281, 62 L. Ed. 2d 481, 100 S. Ct. 553 (1980) (state tort claim). The certified question inquires whether Kansas law regards an accrued cause of action as a "vested" property right.

One commentator has aptly noted: "[I]t has long been recognized that the term 'vested right' is conclusory—a right is vested when it has been so far perfected that it cannot be taken away by statute." Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation*, 73 Harv. L. Rev. 692, 696 (1960). Numerous authorities have recognized inconsistencies in the use of the term "vested rights" in the context of retroactive legislation, and some have questioned the wisdom of a vested rights analysis. See *Phillips v. Curiale*, 128 N.J. 608, 621, 608 A.2d 895 (1992) (" '[D]iscerning commentators and judges' have questioned the value of vested rights analysis."); *Peterson v. City of Minneapolis*, 285 Minn. 282, 287, 173 N.W.2d 353 (1969) ("[R]etroactive laws . . . are usually upheld as long as they do not interfere with *vested* legal rights. The rule itself seems simple enough, but the difficulty comes in defining what is a vested right.").

We, too, find the "vested rights" area of the law to be murky. Courts and litigants sometimes rely on broad pronouncements that a particular right is or is not a "vested right," without careful scrutiny of the facts underlying the cases cited in support of the conclusion. As explained below, the analysis of whether a right is "vested" may include considerations other than merely the nature of the right as "property." Separating the ultimate due process analysis from the "vested rights" inquiry is virtually impossible under the cases we have reviewed. The district court acknowledged the virtual inseparability of the two inquiries in explaining that when vested rights are found to exist, retroactive legislation is "nearly universally deemed" unconstitutional.

The district court's second question concerns only the constitutionality of S.B. 762, *i.e.*, the retroactive application of 17-5831. Consequently, our opinion is limited to the retroactivity issue. Our answers to the certified questions are based on and limited to the facts and circumstances in the instant case.

### Kansas Law

We, like many courts, have used the term "vested rights" to describe rights which cannot be taken away by retroactive legislation. See *Harding v. K.C. Wall Products, Inc.*, 250 Kan. 655, 668, 831 P.2d 958 (1992) (right to a defense based on expiration of statute of repose is a vested right). Often the term is used in the negative to explain why other rights may be impaired. See, *e.g.*, *Smith v. Printup*, 254 Kan. 315, 326, 866 P.2d 985 (1993) (plaintiff has no vested right to punitive damages); *Board of Greenwood County Comm'rs v. Nadel*, 228 Kan. 469, 474, 618 P.2d 778 (1980) (defendant has no vested right in a favorable judgment until it is no longer reviewable); *State ex rel. Schneider v. Liggett*, 223 Kan. 610, 613, 576 P.2d 221 (1978) (doctor has no vested right to insist that rule permitting him to practice without liability insurance must remain unchanged for his benefit); *State, ex rel. v. School Dist.*, 163 Kan. 650, 655, 185 P.2d 677 (1947) (no vested rights in the existence or boundaries of a school district); *Brown v. City of Topeka*, 146 Kan. 974, 981, 74 P.2d 142 (1937) (residents have no vested right to insist on continu-

ation of city street name); *Bowen v. Wilson*, 93 Kan. 351, 353, 144 Pac. 251 (1914) (no vested right of appeal); *Wheelock v. Myers*, 64 Kan. 47, 51, 67 Pac. 632 (1902) (no vested right in a rule of evidence).

As the district court and parties have noted, there is no Kansas case addressing whether the legislature can retroactively change a common-law duty of care, thereby eliminating an accrued and pending tort cause of action. Kansas law, however, recognizes some general principles relevant to the question.

First, we have drawn a distinction between substance and procedure when considering the presence or absence of vested rights. "There is no vested right in any particular remedy or method of procedure." *Jones v. Garrett*, 192 Kan. 109, Syl. ¶ 6, 386 P.2d 194 (1963). "A different rule applies, however, to substantive laws. They affect vested rights and are not subject to retroactive legislation." *Harding*, 250 Kan. at 668; *Rios v. Board of Public Utilities of Kansas City*, 256 Kan. 184, 190, 883 P.2d 1177 (1994). Procedure has been described as the "machinery for carrying on the suit, including pleading, process, evidence, and practice," and "the mode or proceeding by which a legal right is enforced, that which regulates the formal steps in an action." *Jones*, 192 Kan. 109, Syl. ¶¶ 2, 4. Substance, on the other hand, has been described as "the law which gives or defines the right," the "law which gives the right or denounces the wrong," and "the law creating any liability against the defendant for his tort committed." *Jones*, 192 Kan. at 114-15.

The line between procedure and substance is not always easy to mark, but the instant case presents no difficulty. On which side of the line does S.B. 762 fall? If upheld, S.B. 762 would retroactively change the "law which gives or defines the right." The RTC rights at stake are substantive, and the defendants do not contend otherwise.

A second principle emerging from our case law is that we have recognized the "accrual" of a cause of action as a significant event and have even linked the moment of accrual to the creation of vested rights. *Nitchals v. Williams*, 225 Kan. 285, 590 P.2d 582 (1979). In *Nitchals*, we had to decide whether a retroactive ap-

plication of K.S.A. 1977 Supp. 40-3113a(e) would impair vested rights belonging to a Personal Injury Protection (PIP) insurer. We identified the moment that the PIP insurer's right to reimbursement or subrogation accrued. Since that moment had not arisen when the new law took effect, we determined that the PIP insurers had no vested rights affected by the change in the law. 225 Kan. at 294-95. Thus, in *Nitchals,* we linked the PIP insurer's vested right to subrogation to the "accrual" of such right, not to the point in time when such right was ultimately satisfied and no longer subject to contention or review. 225 Kan. at 294.

Defendants argue that an accrued cause of action is not a vested property right because it is inchoate and affords no definite or enforceable property right until reduced to final judgment, and its value is contingent on successful prosecution to judgment. This argument fails to recognize the distinction between a right of action and a right of recovery. Accrual of a cause of action means the right to institute and maintain an action for enforcement. *Kinnard v. Stevens,* 122 Kan. 347, 349, 251 Pac. 1085 (1927). The accrual right is a present right and it has value, even if not easily measured in dollars. Recovery, meanwhile, is contingent not only on successful prosecution to judgment, but the defendant's ability to pay. The RTC is not claiming that it has a vested right to *recover* damages from the Franklin defendants, only a vested right to continue its causes of action under the substantive law that existed prior to 17-5831, when the causes of action accrued.

The defendants also rely heavily on the rule, cited frequently in various forms, that "[t]here can be no vested right in an existing law which precludes its change or repeal." *Brown,* 146 Kan. at 981. Stated another way: "No person has a vested right in any rule of law entitling him to insist it shall remain unchanged for his benefit." *Liggett,* 223 Kan. at 612. The same rule has also been phrased more specifically with respect to negligence actions: "[a]n individual does not . . . have a vested right in the common-law rules governing negligence actions." *Samsel v. Wheeler Transport Services, Inc.,* 246 Kan. 336, 358, 789 P.2d 541 (1990); see *West v. Collins,* 251 Kan. 657, 662, 840 P.2d 435 (1992); *Bair v. Peck,* 248 Kan. 824, 838-39, 811 P.2d 1176 (1991); *Manzanares*

*v. Bell*, 214 Kan. 589, 599, 522 P.2d 1291 (1974). Neither *Samsel, West*, nor *Bell* involved a challenge to the *retroactive* application of legislation to an accrued and pending cause of action. The RTC, in the case at bar, does not challenge the prospective validity of 17-5831. The defendants' reliance on the rule that there is no vested right in common-law rules is misplaced.

In *Nadel*, we considered the validity of retroactive legislation. The issue was whether a new law granting a right to appeal to county tax officials could be applied to a pending case. The new law would extend the proceedings and possibly result in the reversal of a favorable judgment received by the taxpayers. We said: "There can be no vested right in an existing law which precludes its change or repeal *as applied to pending litigation.*" 228 Kan. at 473. (Emphasis added.) The *Nadel* statement must be viewed in its proper context. *Nadel* expressly held that the new law in question was procedural, and therefore could be applied retroactively without causing a "vested rights problem." 228 Kan. at 475. We continue to recognize a distinction between procedural and substantive laws when the question is whether such laws can be applied retroactively without impairing vested rights. See *Rios*, 256 Kan. at 190; *Harding*, 250 Kan. at 668.

## Other Jurisdictions

The parties argue extensively from other jurisdictions. The district court and the parties found an apparent split of authority on the question of whether an accrued cause of action constitutes a vested property right.

Many cases appear to hold that a party has no vested property right to a cause of action until it is reduced to a final, unreviewable judgment. See, *e.g., Salmon v. Schwarz*, 948 F.2d 1131, 1143 (10th Cir. 1991); *Arbour v. Jenkins*, 903 F.2d 416, 420 (6th Cir. 1990); *Sowell v. American Cyanamid Co.*, 888 F.2d 802, 805 (11th Cir. 1989); *Grimsey v. Huff*, 876 F.2d 738, 741 (9th Cir. 1989); *In re Consol. U.S. Atmospheric Testing Litigation*, 820 F.2d 982, 988 (9th Cir. 1987); *Hammond v. United States*, 786 F.2d 8, 12 (1st Cir. 1986); *Jefferson Disposal Co. v. Parish of Jefferson, LA.*, 603 F. Supp. 1125, 1137 (E.D. La. 1985); *Clausell v. Hobart*

*Corp.*, 515 So. 2d 1275 (1987); *Hendon v. DeKalb County*, 203 Ga. App. 750, 759, 417 S.E.2d 705 (1992); *Phillips v. Curiale*, 128 N.J. at 626; *Texas Gas Exploration Corp. v. Fluor Corp.*, 828 S.W.2d 28, 32 (Tex. Civ. App. 1991); *Johnson v. Continental West*, 99 Wash. 2d 555, 563, 663 P.2d 482 (1983).

On the other hand, many cases appear to hold that a cause of action becomes a vested property right once it has accrued. See, *e.g., Mathis v. Eli Lilly and Co.*, 719 F.2d 134, 141 (6th Cir. 1983); *Thorp v. Casey's General Stores, Inc.*, 446 N.W.2d 457, 460-61 (Iowa 1989); *Karl v. Bryant Air Conditioning*, 416 Mich. 558, 573, 331 N.W.2d 456 (1982); *Schendt v. Dewey*, 246 Neb. 573, 577, 520 N.W.2d 541 (1994); *St. Paul Fire & Marine Ins. Co. v. Getty Oil Co.*, 782 P.2d 915, 920 (Okla. 1989); *Gibson v. Com.*, 490 Pa. 156, 161, 415 A.2d 80 (1980); *Berry By and Through Berry v. Beech Aircraft*, 717 P.2d 670, 676 (Utah 1985); *Lewis v. Canaan Valley Resorts, Inc.*, 185 W. Va. 684, 695, 408 S.E.2d 634 (1991).

An examination of the cited authorities reveals that the apparent conflicting holdings are not as divergent as they initially appear. Many of the seemingly contrary cases are explained at least in part by important factual differences. Reviewing "vested rights" cases requires a look beyond the labels to the ingredients which shaped the courts' conclusions. Important factors are: (1) the nature of the rights at stake (*e.g.*, procedural, substantive, remedial), (2) how the rights were affected (*e.g.*, were the rights partially or completely abolished by the legislation; was any substitute remedy provided), and (3) the nature and strength of the public interest furthered by the legislation. See Hochman, 73 Harv. L. Rev. at 697. Although, as one court has noted, these factors "are as nebulous as the term itself," *Peterson*, 285 Minn. at 288, they nonetheless help explain why courts have reached what, on the surface, appear to be conflicting conclusions about whether particular rights are "vested rights," immune from retroactive legislation. Several courts have incorporated Hochman's factors or similar ones into tests for the constitutionality of retroactive legislation. See *Jefferson Disposal*, 603 F. Supp. at 1136; *Phillips*, 128 N.J. at 621; *Peterson*, 285 Minn. at 288.

We turn now to a review of specific cases. We conclude that the cases relied on by the defendants in contending that no vested right exists in a tort claim until final judgment are distinguishable from the case at bar. Several of the federal cases cited by the defendants involved state tort claims preempted by either the Nuclear Energy Authorization Act or the Federal Employees' Liability Reform and Tort Compensation Act. (See *Salmon, Arbour, Sowell, Hammond, Atmospheric Testing*). Both of those statutes allowed the plaintiffs to pursue judicial remedies in the federal courts. Thus, the plaintiffs in those cases were not deprived of their right to judicial redress entirely, but were shifted from one remedial scheme to another.

Two cases relied on by the defendants involved retroactive legislation that, the courts acknowledged, merely cured or clarified defects in existing ambiguous statutes. See *Grimsey*, 876 F.2d at 741-42; *Johnson*, 99 Wash. 2d at 563. Those cases did not abolish common-law accrued causes of action. Such curative legislation has been viewed as an exception to the general rule against retroactive legislation impairing substantive rights. See *Hochman*, 73 Harv. L. Rev. at 703-06.

Two other cases relied on by the defendants involved retroactive legislation aimed at urgent problems of great public interest. See *Taxpayers for the Animas-La Plata v. Animas-La Plata*, 739 F.2d 1472, 1478 (10th Cir. 1984) (taxpayers' challenge to the validity of water district "ballooned into a matter of great consequence for the entire state of Colorado," and the legislation abrogating the taxpayers' challenge was supported by a "discernable public purpose"); *Jefferson Disposal*, 603 F. Supp. at 1136 (federal statute limiting local governments' liability for damages for federal antitrust violations deemed "a matter of great national concern," and plaintiffs were still left with a valuable remedy).

There is no such urgent public interest underlying S.B. 762. The retroactive application of 17-5831 serves only the interests of the defendants in pending cases brought against them. Prospectively, 17-5831 may serve legitimate public interests in encouraging people to serve as outside directors, and encouraging savings and loan associations to lend money with less fear of neg-

ligence liability, but these interests are not served to any greater degree by making 17-5831 retroactive.

Several other cases cited by the defendants are also distinguishable or rely on conclusory language or reasoning with which we disagree. In *Clausell*, 515 So. 2d at 1276, the focus of the vested-rights inquiry was upon the retroactivity of a judicial decision, not a statute. We note that a Florida intermediate court has since observed that neither *Clausell's* vested-rights holding, nor the cases it cites are "authority for the proposition that a state, once a cause of action has accrued and suit commenced, may abolish or diminish the claimant's right to be fully compensated for the damages incurred." *City of Winter Haven v. Allen*, 541 So. 2d 128, 132 (Fla. Dist. App. 1989). The Texas Court of Appeals in *Texas Gas Exploration* reasoned that the 10-year repose statute was intended to be applied retroactively. 828 S.W.2d at 32. We have reached the opposite result. *Harding*, 250 Kan. at 668.

The defendants have cited one intermediate appellate court case, *Hendon v. DeKalb County*, 203 Ga. App. 750, which supports their position. In *Hendon*, the Georgia Court of Appeals upheld the constitutionality of retroactively applying a 1990 statute eliminating "gross negligence" liability to a plaintiff's pending tort cause of action, which had accrued in 1986. The plaintiff's theory was based solely on gross negligence. The Court of Appeals affirmed the defendants' motion for summary judgment based on the 1990 law, reasoning that "[u]ntil time for review has passed, a party has no vested right to a cause of action which has been removed by legislative enactment." 203 Ga. App. at 759.

Two observations explain our reservations about *Hendon*. First, the vested-rights holding was made upon a motion for reconsideration and was stated in conclusory fashion with no supporting reasoning. Second, the decision strikes us as inconsistent with the holding of the Georgia Supreme Court in *Synalloy Corp. v. Newton*, 254 Ga. 174, 176-77, 326 S.E.2d 470 (1985), which stated:

"At such time as there shall co-exist all of the elements which, at law, combine to create a cause of action, that cause of action is deemed to be vested, and thereafter cannot be diminished by legislative act. Before that time, however,

when the elements which ultimately might combine to create the cause of action are as yet inchoate, a new statute may delineate any cause of action which shall mature after its effective date.

"In Georgia, a cause of action in tort does not vest until three elements exist: (1) the person is injured; and (2) learns or reasonably should have learned of the injury; and (3) learns or reasonably should have learned of the cause of the injury."

Thus, without citing or acknowledging *Synalloy Corp.*, the Georgia Court of Appeals in *Hendon* seemed to reach a conflicting conclusion. We disagree with the result and the reasoning in *Hendon*.

Of all the cases cited by defendants as holding that an accrued cause of action is not a vested right, perhaps the most analogous to the instant case is *Phillips v. Curiale*, 128 N.J. 608, 608 A.2d 895 (1992) (*Phillips II*). In *Phillips II*, the plaintiff, a member of the New Jersey National Guard, was injured while riding in an armored personnel carrier driven by the defendant, a fellow Guard member. The plaintiff filed suit in 1980. In 1987, his case was still pending. That year, in response to an invitation from the New Jersey Supreme Court, the New Jersey Legislature passed a law eliminating liability for Guard members for negligence in the line of duty. See *Phillips v. State Dept. of Defense*, 98 N.J. 235, 486 A.2d 318 (1985) (*Phillips I*). The law was not made retroactive.

The *Phillips II* court considered the question of vested rights in dicta, explaining that it would address the issue in case the legislature amended the law to make it retroactive. The court concluded that "inchoate tort claims have not been regarded as vested rights of sufficient status to withstand, *in all circumstances*, a clear legislative intent to apply retroactively the amendments to plaintiff's cause of action." 128 N.J. at 625. (Emphasis added.) With respect to the particular circumstances present in *Phillips II*, the court noted that "[t]he specter of soldier suing soldier for a service-related accident" could have been viewed as "destructive of the morale and camaraderie that is essential to military teamwork and discipline." 128 N.J. at 626. *Phillips II* further assumed "that the legislation would not leave petitioner remediless under the military compensation law." 128 N.J. at 627.

*Phillips II* also has elements that distinguish it from the case at bar. We note the strength of New Jersey's public interest in the military, the assumption of a military remedy, and the court's conclusion on retroactivity appearing as dicta. We also find the judicial invitation for New Jersey's legislative action significant.

In summary, the defendants have not cited a case that we find persuasive in support of their argument that S.B. 762 did not impair vested rights belonging to the RTC.

The RTC relies on *Thorp v. Casey's General Stores, Inc.*, 446 N.W.2d 457 (Iowa 1989) which is similar to the case at bar. In *Thorp*, a 13-year-old child was fatally injured by a drunken driver on April 1, 1985. In 1987, the child's mother brought suit against the store, where the driver had purchased beer before the accident. At the time of the accident, the Iowa Dramshop Act provided a right of action against any licensee "who shall *sell* or give any beer . . . to any such person while . . . intoxicated, *or serve* any such person to a point where such person is intoxicated." In 1986, however, the Iowa Legislature amended the statute, striking the "sell *or* give" language and replacing it with "sold *and* served." Mrs. Thorp conceded that the store did not "serve" beer to the driver. 446 N.W.2d at 459.

The question was whether the 1986 "sold and served" amendment applied to Thorp's action, which was filed in 1987 but which accrued in 1985. By the express terms of the statute, it was to apply to any action filed after July 1, 1986. The district court applied the statute to Thorp's case and dismissed the claims against Casey's General Stores. The Iowa Supreme Court reversed, holding the application of the 1986 amendment retroactively to Thorp's claim was unconstitutional because it "work[ed] a substantive change in the law" and "deprived Thorp of her cause of action." The court reasoned:

"In summary, the 1986 amendment that deprived plaintiff of her cause of action does not fall within those categories of curative or emergency legislation that involve an overriding public interest and which can constitutionally be applied retroactively. Neither do we believe that the legislation was merely a change in procedure or remedy. Rather, we believe that plaintiff had a vested property right in her cause of action against Casey's . . . ." 446 N.W.2d at 463.

In the case at bar, as in *Thorp*, there does not appear to be a compelling public interest in retroactivity. Any public interest supporting K.S.A. 1994 Supp. 17-5831, whether encouraging people to be directors or encouraging lenders to make loans, is prospective in nature and not furthered by S.B. 762.

Other cases cited by the RTC offer implicit support for its position. For example, *Lewis v. Caanan Valley Resorts, Inc.*, 185 W. Va. 684, upheld the constitutionality of the West Virginia Skiing Responsibility Act, which precluded an injured plaintiff from suing a ski lift operator for negligence. The West Virginia Court reasoned that "the Act did not impair any vested rights of the plaintiff's because the Act was enacted *prior to accrual* of the plaintiffs' common-law causes of action." 185 W. Va. at 695. Similarly, in *Resolution Trust Corp. v. Hess*, 820 F. Supp. 1359 (D. Utah 1993), the RTC sued former savings and loan directors for common-law negligence. In 1993, well after the RTC's claims had accrued and the case had been filed, the Utah Legislature passed a law similar to K.S.A. 1994 Supp. 17-5831, removing director liability except for "gross negligence or willful misconduct." There was no question of retroactivity because the Utah Legislature made it clear that the law was not retroactive. The district court noted, however, that the law would "affect vested rights," implying that it could not be applied retroactively even if the legislature had so intended. 820 F. Supp. at 1365 n.5.

The weight of authority rests with the RTC. Its common-law causes of action for negligence and negligent breach of fiduciary duty were, under the facts of this case, "vested property rights" under Kansas law. The answer to certified question one is "yes," as qualified by our analysis.

### Certified Question Two:

**Is S.B. 762, which makes K.S.A. 17-5831 retroactive, unconstitutional under the constitution of the State of Kansas when applied to claims which accrued prior to its enactment?**

The RTC has also challenged the constitutionality of S.B. 762 under the Kansas Constitution. We have previously considered

federal court certification on the constitutionality of Kansas statutes. *Bair v. Peck*, 248 Kan. 824, 826, 811 P.2d 1176 (1991); *Samsel v. Wheeler Transport Services, Inc.*, 246 Kan. 336, 337, 789 P.2d 541 (1990). The prologue to our analysis recognizes the presumption of constitutionality.

"The constitutionality of a statute is presumed, and all doubts must be resolved in favor of its validity. Before a statute may be stricken down, it must clearly appear the statute violates the Constitution. Moreover, it is the court's duty to uphold the statute under attack, if possible, rather than defeat it, and if there is any reasonable way to construe the statute as constitutionally valid, that should be done." *Bair*, 248 Kan. at 829.

## Section 18 of the Kansas Bill of Rights

Section 18 of the Kansas Bill of Rights provides:

"**Justice without delay.** All persons, for injuries suffered in person, reputation or property, shall have remedy by due course of law, and justice administered without delay."

In *Ernest v. Faler*, 237 Kan. 125, 697 P.2d 870 (1985), we considered the nature of the § 18 inquiry. We held unconstitutional a statute, K.S.A. 2-2457 (Ensley), which required a person damaged from a pesticide application to file a written statement of damage with the county attorney within 60 days of the damage discovery in order to maintain a civil action to recover damages. 237 Kan. 125, ¶ 1.

We held "that the provisions of K.S.A. 2-2457 are void and unenforceable as a violation of the due process and the equal protection clauses of the United States and Kansas Constitutions." 237 Kan. at 127.

After an analysis of the distinction between the concepts of due process and equal protection, we commented:

"The right of the plaintiff involved in this case is the fundamental constitutional right to have a remedy for an injury to person or property by due course of law. This right is recognized in the Kansas Bill of Rights § 18, which provides that all persons, for injuries suffered in person, reputation or property, shall have a remedy by due course of law, and justice administered without delay. In 1904, the term, 'remedy by due course of law,' was defined in *Hanson v. Krehbiel*, 68 Kan. 570, 75 Pac. 1041 (1904), as follows:

" 'Remedies by due course of law," as used in section 18 of the bill of rights, means the reparation for injury, ordered by a tribunal having jurisdiction, in due course of procedure and after a fair hearing." Syl. ¶ 2.' 237 Kan. at 131.

We concluded by stating, "[I]t is clear that the right of person injured by the tortious act of another to a remedy for his injuries is one of the basic constitutional rights guaranteed protection by the Kansas courts." 237 Kan. at 132. "Remedy by due course of law is tied to due process concerns." *In re Marriage of Soden*, 251 Kan. 225, 233, 834 P.2d 358 (1992).

We have endorsed special due process rules applicable to retroactive legislation in our discussion under question one. Substantive laws affecting vested rights cannot be made retroactive without violating due process. See *Rios v. Board of Public Utilities of Kansas City*, 256 Kan. 184, 190, 883 P.2d 1177 (1994); *Harding v. K.C. Wall Products, Inc.*, 250 Kan. 655, 668, 831 P.2d 958 (1992). We conclude under Kansas law that S.B. 762 violates due process and, therefore, § 18 of the Kansas Constitution Bill of Rights.

We have searched for any reasonable way to construe S.B. 762 as constitutionally valid. We have a duty to uphold the statute, if possible. Our search has not been successful. Retroactivity has presented an insurmountable constitutional infirmity.

The answer to certified question two is "yes."