IN THE SUPREME 
COURT OF TEXAS
 
════════════
No. 
06-0714
════════════
 
Barbara Robinson, Individually 
and as Representative of the Estate of John Robinson, Deceased, 
Petitioner,
 
v.
 
Crown, Cork & Seal 
Company, Inc., Individually and as Successor to Mundet 
Cork Corporation, Respondent
 
════════════════════════════════════════════════════
On Petition for Review from 
the
Court of Appeals for the 
Fourteenth District of Texas
════════════════════════════════════════════════════
 
 
Argued February 7, 2008
 
            

            
Justice Medina filed a 
concurring opinion.
 
            
I join the Court’s opinion because I agree that a retroactive law is 
presumptively “unconstitutional without a compelling justification that does not 
greatly upset settled expectations” and that no such justification exists here. 
___ S.W.3d ___, ___. I further agree that the 
“constitutional prohibition against retroactive laws does not insulate every 
vested right from impairment, nor does it give way to every reasonable exercise 
of the Legislature’s police power[.]” Id. at ___. And finally, I agree that Chapter 149 here 
violates article I, 
section 16 of the Texas Constitution because it operates to retroactively 
abolish the Robinsons’ vested property rights, or in the words of the 
Court—“significantly impacts a substantial interest the Robinsons have in a 
well-recognized common-law cause of action.” ___ S.W.3d at 
___. I write separately because I do not share the Court’s disdain for 
traditional vested rights analysis nor the dissent’s view of that 
analysis.
I
            
I begin, as the Court does, with the twin goals served by the 
Retroactivity Clause: (1) it protects individuals against legislative enactments 
that unfairly deprive them of legitimate expectations, Owens Corning v. 
Carter, 997 S.W.2d 560, 572 (Tex. 1999), and (2) it ensures that legislative 
enactments do not single out individuals for preferential or arbitrary 
treatment. See In re A.V., 113 S.W.3d 355, 361 (Tex. 2003) (upholding law 
against retroactivity challenge because “the State [was] not pursuing a 
retributive or punitive aim”); see also Landgraf v. 
USI Film Prods., 511 U.S. 244, 284–85 & n.20 
(1994). As the United States Supreme Court has observed, retroactive lawmaking 
creates special opportunities for rewarding favored constituencies at the 
expense of disfavored ones. Landgraf, 511 U.S. 
at 266–67.
            
When determining whether a statute violates the Retroactivity Clause, 
vested rights analysis poses three related questions. First, does the claimant 
have a vested right affected by the statute? Second, does the retroactive 
statute impair that vested right? And finally, does a compelling public interest 
justify impairment through the state’s police power? See In re A.V., 
113 S.W.3d at 361; Barshop v. Medina Cnty. 
Underground Water Conserv. 
Dist., 925 S.W.2d 618, 633–34 
(Tex. 1996).
            
Concluding that vested rights analysis was “difficult” and 
“inconsistent,” the court of appeals declined to address whether the Robinsons 
had a vested right in their accrued tort claim or whether Chapter 149 intruded 
upon that right. 251 S.W.3d 520, 526. The court 
concluded instead that, regardless of whether Chapter 149 implicated vested 
rights, the law could be upheld as a reasonable exercise of the police power. 
Id. at 534 (citing Barshop, 925 S.W.2d at 633-34). Taking 
much the same tack, the Court begins with the last question but correctly 
rejects the court of appeals’ rational basis analysis as the appropriate 
constitutional standard. Along the way, the Court grapples with the nature of 
the underlying property interest and its impairment, ultimately concluding that 
the Robinsons possessed a substantial interest in a well-founded claim (dare I 
say a vested property right) that Chapter 149 retroactively impaired. Although 
the Court is reluctant to use the term “vested rights,” preferring instead to 
speak of “settled expectations,” I believe we are talking about the same 
thing.
II
            
Whether a right may be regarded as vested depends on considerations of 
“fair notice,” “reasonable reliance,” and “settled expectations.” Owens 
Corning, 997 S.W.2d at 572– 73; see also McCain v. Yost, 284 
S.W.2d 898, 900 (Tex. 1955). Because the parties agree that Robinson’s claim has 
accrued, see Pustejovsky v. Rapid-Am Corp., 35 
S.W.3d 643, 653 (Tex. 2000), the first question is whether or not that accrued 
tort claim is a vested right. I conclude that it is.
            
While we have never invalidated a statute on the grounds that it 
retroactively abrogated an accrued cause of action, we have noted on several 
occasions that accrued causes of action enjoy constitutional protection under 
article I, section 16. To be sure, no one has a vested right in a “mere 
expectation . . . based upon an anticipated continuance of the present general 
laws.” Ex parte Abell, 613 
S.W.2d 255, 261 (Tex. 1981). At the same time, the Retroactivity 
Clause
 
must be held to protect every right, even though not 
strictly a right of property, which may accrue under existing laws prior to the 
passage of any act which, if permitted a retroactive effect, would take away the 
right. A right has been well defined to be a well founded claim and a well 
founded claim means nothing more nor less than a claim 
recognized or secured by law. . . . [A] right, in a 
legal sense, exists when in consequence of given facts the law declares that one 
person is entitled to enforce against another a claim, or to resist the 
enforcement of a claim urged by another.
 
Mellinger v. City of Houston, 3 S.W. 249, 253 (Tex. 1887); see 
also Owens Corning, 997 S.W.2d at 572 n- 73(observing that “[c]onsiderations of fair notice, reasonable reliance, and 
settled expectations play a prominent role” when determining rights entitled to 
constitutional protection); Middleton v. Tex. Power & Light Co., 185 
S.W. 556, 560 (Tex. 1916) (observing that a vested common law right of action is 
a property right that the legislation at issue did not affect).
            
We have also held that the Legislature may affect remedies for accrued 
causes of action, so long as the remedy is not entirely taken away. See, 
e.g., City of Tyler v. Likes, 962 S.W.2d 489, 502-03 (Tex. 1997); Phil H. 
Pierce Co. v. Watkins, 263 S.W. 905, 907 (Tex. 1924) (orig. proceeding); 
see also DeCordova v. City of Galveston, 4 Tex. 
470, 477–78 (1849) (explaining the remedial exception and endorsing a New 
Hampshire decision affording protection to accrued causes of action). If Texas 
law afforded no constitutional protection to accrued causes of action, there 
would be no need to permit the Legislature to modify attendant remedies, nor any 
need to bar the Legislature from stripping a plaintiff of all remedy.
            
Not all courts agree with this analysis, however. Several federal courts 
suggest that a plaintiff has no vested right in an accrued tort claim until the 
claim is pursued to final judgment.[1] The majority of jurisdictions, however, 
appear to afford constitutional protection to accrued tort claims without a 
final-judgment requirement.
            
For example, the Kansas Supreme Court has rejected the notion that a 
property right in an accrued tort claim should not vest before final judgment. 
Resolution Trust Corp. v. Fleischer, 892 P.2d 497, 
500–06 (Kan. 1995). The court noted some disagreement about vested 
rights, particularly in the federal courts, but suggested that “the apparent 
conflicting holdings [were] not as divergent as they initially appear[ed].” Id. 
at 503. Instead, the court observed that the outcome in decisions 
espousing a final-judgment requirement could generally be explained by other 
factors, such as: “(1) the nature of the rights at stake (e.g., 
procedural, substantive, remedial), (2) how the rights were affected 
(e.g., were the rights partially or completely abolished by the 
legislation; was any substitute remedy provided), and (3) the nature and 
strength of the public interest furthered by the legislation.” Id. The 
court then noted that most of the federal cases favoring a final-judgment 
requirement involved issues of federal preemption and the substitution of a 
federal remedy for the common law claim, while others involved either the 
clarification of defects in an existing ambiguous statute or retroactive 
legislation aimed at urgent problems of great public interest. See Id. 
(citing cases). In short, the cases generally turned on factors other than the 
existence of a final judgment.
            
The United States Supreme Court has hesitated to apply the due process 
clause in this area. See, e.g., Daniels v. Williams, 474 U.S. 327, 
332 (1986) (rejecting reasoning that would superimpose the Fourteenth Amendment 
as a “font of tort law”); Paul v. Davis, 424 U.S. 693, 701 (1976) (same); 
but see Logan v. Zimmerman Brush Co., 455 U.S. 422, 428 (1982) 
(considering it “settled” that “a cause of action is a species of property”). 
Notions of comity and federalism may explain this hesitancy in part, 
particularly when state enactments are under review. David Richards & Chris 
Riley, Symposium on the Texas Constitution: a Coherent Due-Course-of-Law 
Doctrine, 68 Tex. L. Rev. 
1649, 1666 (1990). But these considerations do not similarly encumber state 
courts. Moreover, our state Constitution, unlike its federal counterpart, 
includes an independent anti-retroactivity provision, and Texas’s Retroactivity 
Clause goes beyond federal guarantees of property and due process. Ex parte 
Abell, 613 S.W.2d at 260. As we explained in Mellinger:
 
It can not be presumed that in 
adopting a Constitution which contained a declaration “that no retroactive law 
shall be made,” that it was intended to protect thereby only such rights as were 
protected by other declarations of the Constitution which forbade the making of 
ex post facto laws, laws impairing the obligation of contracts, or laws which 
would deprive a citizen of life, liberty, property, privileges or immunities, 
otherwise than by due course of the law of the land. . . .
 
3 S.W. at 252; see also 
Richards & Riley, 68 Tex. L. 
Rev. at 1650 (noting that drafters of our 1836 Constitution held “a 
distinctly Jacksonian” concept of democracy and a 
“wariness of governmental authority”). And finally, every state whose 
constitution includes an independent anti-retroactivity provision concludes that 
accrued causes of action are vested rights.[2]
            
Though a plaintiff’s ultimate right to recover is contingent upon success 
at trial, a plaintiff may nonetheless have a “settled expectation” that, once 
wronged, he or she will be able to pursue a claim against his wrongdoer under 
the substantive laws as they existed at the time his or her cause of action 
accrued. Mellinger, 3 S.W. at 253; see also 
Likes, 962 S.W.2d at 502 (indicating that retrospective law that entirely 
eliminates pending cause of action would be “unconstitutionally retroactive”). A 
plaintiff thus has a property interest in an accrued cause of action which the 
Texas Constitution protects like other property. Subaru of 
Am. v. David McDavid Nissan, Inc., 84 S.W.3d 212, 219 (Tex. 
2002).
III
            
The dissent, however, prefers the minority view that a property interest 
in an accrued cause of action not vest before final judgment is rendered. 
According to the dissent, no reasonable litigant has a “‘settled expectation’ of 
achieving monetary recovery” before judgment. ___ S.W.3d ____, 
____ (Wainwright, J. dissenting). And as to this case, the dissent 
submits that the “Robinsons’ expectation in the continued state of law [was] 
low” because of “numerous contingencies” and their failure to take “any action 
in reliance on the law at the time.” ___ S.W.3d ____, ____, 
___ (Wainwright, J. dissenting). In the dissent’s view, the Robinsons’ 
pending tort claims were nothing more than a valueless contingent interest in an 
uncertain future judgment. I disagree for several reasons.
            
First, I reject the notion that an accrued cause of action has no value 
apart from a judgment and is not itself a protected property interest. An 
accrued cause of action is clearly property under Texas law. See Tex. Prop. Code § 12.014. It has value, even 
if that value is not always easy to measure. Ownership and control is vested in 
the holder of the claim, and those interests can generally be sold or assigned. 
Int’l Proteins Corp. v. Ralston-Purina Co., 744 S.W.2d 932, 934 (Tex. 
1988); see PPG Indus., Inc. v. JMB/Houston Ctrs. 
Partners Ltd. P'ship, 146 S.W.3d 79, 106 (Tex. 
2004) (tracing development of modern law allowing transfer of choses in action); State Farm Fire & Cas. Co. v. Gandy, 925 S.W.2d 696, 707 (Tex. 1996) 
(noting that “[p]racticalities of the modern world 
have made free alienation of choses in action the 
general rule”).
            
Further, an accrued cause of action is “constitutional” property, a 
vested property right, because the holder has a legitimate expectation that the 
claim will be recognized by state law. See Jack M. Beermann, Government Official Torts and the Takings 
Clause: Federalism and State Sovereign Immunity, 68 B.U.L. Rev. 277, 302 (1988); see 
also Logan, 455 U.S. at 428 (considering it “settled” that “a cause of 
action is a species of property”). The dissent’s preoccupation with final 
judgments is misguided because the relevant expectations here involve the cause 
of action, not some future judgment. It is the right to sue itself—the 
lawsuit—that is being taken away, not the final outcome.
            
Once a lawsuit is filed, subsequent action by the sovereign interferes 
not with possible or potential rights that might accrue in the future, but with 
existing expectations and rights that have accrued—that have “vested”—and that 
constitute a present property interest. As one legal scholar 
explains: “a cause of action might be thought of as an entitlement to employ the 
state’s adjudicatory machinery which can only be denied for cause, cause being 
the failure to establish the elements of the cause of action or to comply with 
reasonable procedural requirements.” Beermann, 
68 B.U.L. Rev. at 305 n.121 (citing Logan, 455 U.S. 422). Other 
authorities share the same view:
 
Determining whether vested rights exist implicates 
whether the property owner has a “legitimate claim of entitlement.” . . . 
Clearly, the plaintiff has no “entitlement” to the damages sought, or to any 
form of successful resolution of the lawsuit, as he might lose on the merits or 
because of procedural aspects of the case. But just as clearly, the plaintiff’s 
interest in the lawsuit itself should qualify as an “entitlement that may be 
terminated only for cause” that should warrant constitutional 
protection.
 
Jeremy A. Blumenthal, Legal Claims 
as Private Property: Implications for Eminent Domain, 36 Hastings Const. L.Q. 373, 401 (Spring 
2009) (footnotes omitted); see also Resolution Trust Corp., 892 
P.2d at 502 (holding accrued tort claim to be vested property right and 
rejecting similar final-judgment argument because it “fails to recognize the 
distinction between a right of action and a right of recovery”).
            
Finally, even if some manner of affirmative act is, as the dissent 
suggests, a necessary part of the “settled expectations” test, it is clearly 
established here. Contrary to the dissent’s characterization, the Robinsons were 
not idle while Crown Cork labored to undo their accrued claim. The Robinsons 
filed suit, litigated their claim for several months, and obtained a partial 
summary judgment. Only after that did the Legislature enact Chapter 149, taking 
away the Robinsons’ summary judgment and their underlying cause of action. 
Although the Robinsons had not yet obtained a final judgment (and thus had no 
vested property right in that non-existent judgment), they did possess a vested 
property right in their pending cause of action that included the right to 
prosecute the claim. See Washington-Southern Navigation Co. v. Baltimore 
& Philadelphia S.B. Co., 263 U.S. 629, 635 (1924) (“The right of a 
citizen of the United States to sue in a court having jurisdiction of the 
parties and of the cause of action includes the right to prosecute his claim to 
judgment.”).
            
Although I emphatically disagree with the dissent’s view that an accrued 
cause of action is too indefinite, and its owner’s expectations too 
insignificant, to warrant constitutional protection, I readily concede that “no 
one has a vested right . . . or a property right, in a mere rule of law.” ___ 
S.W.3d at ____ (Wainwright, J. dissenting) (quoting Middleton, 185 S.W. 
at 560). The continuation of a rule of law in the abstract, however, is very 
different from the preservation of a claim that has already accrued under that 
law. Although a “person has no property, no vested interest, in any rule of the 
common law,” nevertheless, “[r]ights of property which 
have been created by the common law cannot be taken away without due process.” 
Munn v. Illinois, 94 U.S. 113, 134 
(1877). 
            
The distinction is the difference between the prospective or retroactive 
application of a law. Prospective laws that diminish or eliminate future causes 
of action (or defenses) do not ordinarily implicate vested property rights. 
However, where “a law changes the legal consequences of past 
actions, it interferes with vested rights, and courts have found that property . 
. . is implicated.” Olivia A. Radin, Rights 
as Property, 104 Colum. L. 
Rev. 1315, 1331 (2004). A cause of action vests upon the occurrence of an 
injury, and that “vested right of action is property in the same sense in which 
tangible things are property, and is equally protected 
against arbitrary interference.” Pritchard v. Norton, 
106 U.S. 124, 132 (1882).
            
Our opinion in Ex parte Abell, which the 
dissent quotes at length, is to the same effect. ___ S.W.3d at ___ (Wainwright, 
J. dissenting) (quoting Ex parte Abell, 613 
S.W.2d at 261). Abell restates the rule from 
Mellinger that the Legislature can declare 
prospectively that the state of facts that once created a claim, no longer will; 
but once “the state of facts which the law declares shall give a right comes 
into existence,” the right is “fixed” or “vested,” and the Legislature cannot 
retroactively undo what has already accrued. Abell, 613 S.W.2d at 261 (quoting Mellinger, 3 S.W. at 
253). 
            
The dissent accepts the rule, but only to a point. It acknowledges that a 
defense of repose vests upon accrual and cannot thereafter be rescinded by the 
Legislature:
 
. . . the Legislature cannot 
resurrect causes of action that have already been extinguished by retroactively 
lengthening the statute of limitations. E.g. Baker Hughes, Inc. v. 
Keco R. & D., Inc., 12 S.W.3d 1, 4 & n.12 
(Tex. 1999); Wilson v. Work, 62 S.W.2d 490, 490–91 (Tex. 1933) (per curiam). . . . In other words, when the statute extinguished 
a cause of action, a defendant received a vested right of repose barring the 
extinguished claim.
 
__ S.W.3d at ____ 
(Wainwright, J. dissenting). But the dissent refuses to extend 
similar protection to an accrued claim. I see no basis for limiting the 
Retroactivity Clause to defensive claims. See 1 George D. Braden, et al., the Constitution of 
the State of Texas: an Annotated and Comparative Analysis 58 (1977) 
(observing that the “prohibition concerning ‘retroactive laws’ seems to spring 
from a general suspicion regarding all retroactive laws”).
            
Rights acquired under existing law, whether defensive or offensive, are 
treated similarly under the Texas Constitution. Thus, once a statute of 
limitations has run or a cause of action has accrued, retroactive legislation 
that either revives an extinguished claim, or bars an existing one, affects a 
vested property right. The Retroactivity Clause applies in either instance. 
See Mellinger, 3 S.W. at 253 
(observing that Retroactivity Clause applies both to vested claims and 
defenses). I would therefore conclude that the Robinsons’ accrued claims 
are vested rights to which the protection of article I, section 16 may 
apply.
IV
            
Crown Cork argues, however, that even if a plaintiff has a vested right 
in an accrued tort claim, Chapter 149 does not intrude upon the Robinsons’ 
vested rights for several reasons. First, Crown Cork argues that Chapter 149 
does not infringe on this right because the statute merely works a change to 
procedure or remedy. It is well established that a party has no vested right in 
a remedy or rule of procedure. Subaru, 84 S.W.3d at 
219. The lines that divide substance from procedure or remedy, however, 
are notoriously difficult to draw. Tex. Water Rights Comm’n v. Wright, 464 S.W.2d 642, 648–49 (Tex. 
1971). But we need not parse these “superfine” distinctions here, Langever v. Miller, 76 S.W.2d 1025, 1029 (Tex. 
1934), because, whether regarded as remedial or substantive, Chapter 149 
entirely eliminates the Robinsons’ remedy for Mundet’s 
torts. See Likes, 962 S.W.2d at 502–03; Phil H. 
Pierce Co., 263 S.W. at 907; DeCordova, 4 
Tex. at 479–80. Though it is conceivable that Robinson may establish that 
one of the other defendants in the original action is jointly and severally 
liable for all of her damages, Robinson has a separate cause of action against 
each of these defendants that might properly be tried and determined as if it 
were the only claim in controversy. See Morgan v. Compugraphic Corp., 675 S.W.2d 729, 
733–34 (Tex. 1984). Chapter 149 extinguishes this separate action in its 
entirety, releasing Crown Cork from its obligation assumed under the merger 
agreement to pay for Mundet’s torts. See Sam 
Bassett Lumber Co. v. City of Houston, 198 S.W.2d 879, 882 (Tex. 1947) 
(distinguishing permissible changes to statutes of limitations from enactments 
releasing or extinguishing a debt).
            
Crown Cork also argues that Chapter 149 does not intrude on the 
Robinsons’ vested rights because it affects vicarious liability. In Aetna 
Ins. Co. v. Richardelle, 528 S.W.2d 280 (Tex. Civ. 
App.—Corpus Christi 1975, writ ref’d n.r.e.), the court of appeals upheld a law retroactively 
repealing the statutory vicarious liability of some parents for the torts of 
their minor children. Though Aetna described vicarious liability as 
“remedial,” it did not hold that the Legislature might alter vicarious 
liabilities at will without running afoul of the Retroactivity or Contract 
Clauses. Aetna merely held that statutory causes of action do not 
generally give rise to vested rights. Id. at 285 
(citing Dickson v. Navarro Levee Imp. Dist., 139 S.W.2d 257, 259 (Tex. 
1940)). Unlike the parents’ vicarious liability for the torts 
of their children, successor liability is not purely statutory. Successor 
liability, at least when it attends a formal merger, instead arises from the 
contractual merger agreement and from the plaintiff’s underlying tort or 
contract claim, and was recognized at common law. See Tex. & P. R. Co. v. 
Murphy, 46 Tex. 356, 360 (1876); Stephenson v. Tex. & P. R. Co., 
42 Tex. 162, 167–68 (1874); Turner v. Bituminous Cas. Co., 244 N.W.2d 873, 877–78 (Mich. 1976) 
(“Most of [the rules of successor liability] may fairly be said to have arisen 
from case law”). Though successor liability is now governed by statute, the 
corporations law is a shield to common law liability, 
not a legislatively created right within the meaning of 
Dickson.
            
Crown Cork next argues that Chapter 149 does not intrude on the 
Robinsons’ vested rights because it is akin to a borrowing statute or choice of 
law rule mandating that Texas, rather than Pennsylvania or New York, law apply 
to determine corporate successor liability in asbestos cases. In Owens 
Corning, we held that a plaintiff had no vested right in a borrowing statute 
that permitted out-of-state plaintiffs to file stale out-of-state claims in 
Texas courts under Texas’ more permissive statute of limitations. 997 S.W.2d at 571–73. But Chapter 149 represents not only a 
choice of law rule but also a change to Texas’ substantive law of successor 
liability. Cf. id. at 573. Before the passage of 
Chapter 149, no matter which state’s law applied, Crown Cork would have faced 
liability for Mundet’s torts. Tex. Bus. Org. Code § 10.008(a)(3)–(4); Tex Bus. 
Corp. Act § 5.06(3); 
N.Y. Bus. Corp. Law § 906; 15 Pa. Cons. 
Stat. § 1929. Indeed, 
Pennsylvania has already invalidated a statute providing protections virtually 
identical to those found in Chapter 149. See Ieropoli v. AC&S Corp., 842 A.2d 
919, 921 (Pa. 2004).
            
Finally, Crown Cork cites Owens Corning to argue that Chapter 149 
does not interfere with vested rights because Robinson had no legitimate 
expectation that Mundet would merge with a much larger 
corporation and because it is not inequitable to relieve Crown Cork of wholly 
unexpected and innocently acquired asbestos liabilities. 997 
S.W.2d at 572–73. In approving the borrowing statute at issue in Owens 
Corning, we noted that it was not inequitable to require a plaintiff 
bringing an out-of-state claim to satisfy the statute of limitations provided by 
the law supplying the cause of action: “a plaintiff should not be able to gain 
greater rights than he would have in the state where the cause of action arose 
and where he lives simply by bringing suit in Texas.” Id. at 573. But Chapter 149 goes much further and 
“creates an immunity where none existed before.” 
Id. To be sure, Crown Cork probably did not expect the merger with Mundet to entail such extensive liability, and Robinson 
could hardly have a settled expectation that Mundet 
would be acquired by a much larger corporation. But it is not inequitable to 
require Crown Cork to pay for Mundet’s torts because 
when two corporations formally merge, the law regards them as one. Though this 
rule may permit plaintiffs to recover where they otherwise would not, “[i]n substance, if not in form, the post-transfer entity 
distributed the defective products and should be held responsible for them.” 
Restatement (Third) of Torts: 
Products Liability § 12 & 
cmt. b.
            
Thus, I conclude that the Robinsons’ accrued tort claim here is a vested 
right that Chapter 149 has retroactively abrogated. But this is not the end of 
the analysis. As the Court observes, “the constitutional prohibition against 
retroactive laws does not insulate every vested right from impairment” and a 
compelling public interest may justify impairment, although “the heavy 
presumption against retroactive laws” makes instances of this quite rare. ___ S.W.3d at ___.
            
In fact, we have only twice recognized legislative interests of 
sufficient import to override vested private rights: Barshop, 925 S.W.2d 618, and In re 
A.V., 113 S.W.3d 355. At issue in Barshop 
was a statute regulating water use in the Edwards Aquifer basin. Before the 
enactment of the law, property owners were permitted, under the rule of capture, 
to extract as much water as they desired from the aquifer. Concerned that the 
rule of capture discouraged water conservation, the Legislature authorized local 
water districts to regulate water use through a permitting scheme that allocated 
use permits on the basis of historical use. Without conducting a vested rights 
analysis, we held that the Legislature’s interest in water conservation trumped 
whatever interest landowners had in the continued existence of the rule of 
capture because “[c]onservation of water has always 
been a paramount concern in Texas, especially in times, like today, of 
devastating drought.” Barshop, 925 S.W.2d at 626. 
 
            
In In re A.V., 113 S.W.3d 355, we 
held that the Legislature could permissibly enact a statute terminating parental 
rights on the basis of a parent’s future imprisonment for prior criminal 
convictions. Though we found that the provision did not intrude upon vested 
rights, we explained that, even if it had, the Legislature’s interest in 
protecting “the safety and welfare of its children” trumped any individual 
interest in retaining parental rights while unable to care for the child. Id. at 361. 
            
In contrast to the public interest at issue in those cases, the interest 
protected here is essentially a private economic one. As the Court observes, 
“the legislative record is fairly clear that chapter 149 was enacted to help 
only Crown and no one else.” ___ S.W.3d at ___. The 
Legislature certainly has a valid interest in protecting Crown Cork’s 
shareholders and pensioners, and in promoting business in the state. The 
Legislature also has a legitimate interest in protecting defendants from 
excessive liability. But the Legislature’s interest in protecting the financial 
well-being of a favored defendant is not on par with the public interest in the 
avoidance of catastrophic drought or the protection of child welfare. Cf. 
Barshop, 925 S.W.2d at 626; 
In re A.V., 113 S.W.3d at 361. Private economic interests will 
generally not justify intrusions into the vested private rights of others. 
See, e.g., Travelers Ins. Co. v. Marshall, 76 S.W.2d 1007, 101 –12 
(Tex. 1934) (holding that the interests of homeowners during the Great 
Depression did not justify interference with private mortgage contract rights); 
Lucas v. United States, 757 S.W.2d 687, 701 (Tex. 1988) (holding that it 
was “simply unfair and unreasonable to impose the burden of supporting the 
medical care industry solely upon those persons who are most severely injured 
and therefore most in need of compensation.”). Moreover, the Legislature’s 
interest in protecting “innocent” defendants does not justify its assumption 
here of the judiciary’s role of adjusting private obligations incurred under 
existing law. See Landgraf, 511 U.S. at 267 
n.20 (quoting Richmond v. J.A. Croson Co., 488 
U.S. 469, 513–14 (1989) (Stevens, J., concurring in part and concurring in the 
judgment)). As with the takings clause, one of the purposes of the prohibition 
on retroactive lawmaking is to ensure that the burdens of governance do not fall 
unfairly on a small number of citizens. See id. (citing The 
Federalist No. 44 (James Madison)). The legislative interest asserted 
here is simply insufficient to justify an intrusion into the Robinsons’ vested 
rights, and thus I agree with the Court that the innocent successor provisions 
of Chapter 149 cannot be justified as a valid exercise of the police power and 
is, as applied here, prohibited under the Retroactivity Clause. Tex. Const. art. I, § 
16.
 
 
                                                                        
 ______________________________________
                                                                        
 David M. Medina
                                                                        
 Justice
 
Opinion Delivered: October 22, 2010








[1] 
Compare Hammond v. United States, 786 F.2d 8, 12 (1st Cir. 1986) 
(holding that a plaintiff has no vested right in a tort claim until the claim is 
pursued to final judgment); In re TMI, 89 F.3d 1106, 1113 (3d Cir. 1996); 
Zeran v. Am. Online, Inc., 129 F.3d 327, 
335 (4th Cir. 1997); Lunsford v. Price, 885 F.2d 236, 240–41 (5th Cir. 
1989); Symens v. SmithKline Beecham 
Corp., 152 F.3d 1050, 1056 n.3 (8th Cir. 1998); Grimesy v. Huff, 876 F.2d 738, 744 (9th Cir. 1989); 
Salmon v. Schwarz, 948 F.2d 1131, 1143 (10th Cir. 1991); Sowell v. Am. 
Cyanamid Co., 888 F.2d 802, 805 (11th Cir. 1989), with Davis v. Blige, 505 F.3d 90, 103 (2d Cir. 2007) (holding that a 
plaintiff has a vested right in an accrued patent infringement claim); Garcia 
v. Wyeth-Ayerst Labs., 385 F.3d 961, 968 (6th Cir. 2004); Hoyt Metal Co. 
v. Atwood, 289 F. 453, 454–55 (7th Cir. 1923);De Rodulfa v. United States, 461 F.2d 1240, 1257 (D.C. Cir. 
1972).

[2] See 
DeCordova, 4 Tex. 476–77 (looking to the decisions 
of other states whose constitutions contain anti-retroactivity provisions); 
see also Denver, S.P. & P.R. Co. v. Woodward, 4 Colo. 162, 164-65 (Colo. 
1878); Synalloy Corp. v. Newton, 326 S.E.2d 
470, 472 (Ga. 1985); Bryant v. City of Blackfoot, 48 P.3d 636, 642 (Idaho 
2002); Hess v. Chase Manhattan Bank, 220 S.W.3d 758, 769–72 (Mo. 2007); 
Shea v. North-Butte Mining Co., 179 P. 499, 503 (Mont. 1919); Groch v. Gen. Motors Corp., 883 N.E.2d 377, 
408 (Ohio 2008); Mills v. Wong, 155 S.W.3d 916, 921 (Tenn. 
2005).