NOT DESIGNATED FOR PUBLICATION

No. 116,114

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CORY GHOLSTON,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; J. PATRICK WALTERS, judge. Opinion filed October 13, 2017. Affirmed.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before ARNOLD-BURGER, C.J., GARDNER, J., and STUTZMAN, S.J.


PER CURIAM: A habeas corpus motion must be filed within one year. K.S.A. 2016 Supp. 60-1507(f). This time limit can only be extended upon a showing of manifest injustice. The manifest injustice inquiry is limited to considering a movant's reasons for delay and whether the movant makes a colorable claim of actual innocence. K.S.A. 2016 Supp. 60-1507(f)(2). Fourteen years after his first-degree murder conviction, Corey Gholston filed a K.S.A. 60-1507 motion alleging several errors. His reason for delay was that he did not have the benefit of counsel. He also stated that he would testify that he is

1

actually innocent. Neither of these reasons is sufficient to make a showing of manifest injustice. Thus, the district court did not err by dismissing Gholston's motion as untimely.

FACTUAL AND PROCEDURAL HISTORY

In September 2015, Gholston filed a K.S.A. 60-1507 motion for relief. The Kansas Supreme Court summarized the underlying facts of Gholston's case in his direct appeal. *State v. Gholston*, 272 Kan. 601, 602-05, 35 P.3d 868 (2001). The parties are familiar with the facts. Suffice it to say that Gholston was convicted of killing a two-year-old baby in a drive-by shooting.

Following Gholston's conviction the State filed a notice that it would request a hard 40 sentence pursuant to K.S.A. 21-4635 (Furse 1995). At the time of his crime, a person serving a hard 40 sentence was required to serve at least 40 years in prison before becoming eligible for parole. K.S.A. 21-4635(a) (Furse 1995). Before imposing such a sentence, the court was required to consider aggravating and mitigating circumstances. K.S.A. 2000 Supp. 21-4635(b), (c) (Furse 1995). The State's notice cited the fact that "[t]he defendant knowingly or purposely killed or created a great risk of death to more than one person" as an aggravating circumstance. The district court agreed with the State and sentenced Gholston to the hard 40.

Gholston appealed his conviction and sentence, but the Kansas Supreme Court affirmed. 272 Kan. at 605, 626. Approximately 14 years later, Gholston filed the K.S.A. 60-1507 motion that is the basis of the present appeal. The district court found that an

> "evidentiary hearing is not required and that the movant is not entitled to relief as the motion is time barred.
> "Court further finds no showing of manifest injustice to extend the filing deadline for the reasons set out in the State's Response filed herein.
> "Court finds, for the above reasons, the movant's motion is denied."

2

Gholston appealed.

ANALYSIS

Gholston raises two issues on appeal.

His first argument involves the right to a jury trial. Before Gholston's trial, one juror had a family emergency that made her incapable of serving on the jury. The district court judge said that she, the prosecutor, and the defense attorney all spoke with the juror and they "discussed the matter of how to proceed without—how to proceed with 11 jurors, whether we would go for another juror or anything like that." Defense counsel advised Gholston of his right to a 12-person jury and advised Gholston of his options. Gholston chose to proceed with 11 jurors and he executed a waiver of right to jury of 12. In his K.S.A. 60-1507 motion, Gholston asserts that structural error occurred because the court did not properly advise Gholston of his right to a 12-person jury and the effects of waiving that right. He takes issue with the fact that the district judge said that they "'would go for another juror,'" arguing that "[t]here was absolutely no way that the court could 'go for another juror.'" He asserts that he "was never told that if he chose to go with a trial of 12 jurors, a mistrial would be declared and a new trial would begin and a new jury panel would be selected." The other issue Gholston raised in his K.S.A. 60-1507 motion was that "[h]e was deprived of the right and rule of *Alleyne* [*v. United States*, 570 U.S. ___, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013),] to have the Hard 40 determination made by a jury beyond a reasonable doubt."

But before we can reach the merits of his argument, we must determine a few preliminary matters that are key to our consideration:  the sufficiency of the district court judge's findings and whether the district judge erred in finding that Gholston's motion was untimely.

3

*The district court made sufficient findings of fact and conclusions of law to enable meaningful appellate review.*

Gholston's first argument is that the district court failed to comply with Supreme Court Rule 183(j) (2017 Kan. S. Ct. R. 222) "by leaving parties and this Court to guess as to the basis for the district court's rulings." The district court's rulings on both the K.S.A. 60-1507 motion and a subsequent motion to alter or amend judgment incorporated the State's responses to those motions. Gholston asks this court to remand his case to the district court to make adequate findings.

Supreme Court Rule 183 establishes procedures under K.S.A. 60-1507. Rule 183(j) states "[t]he court must make findings of fact and conclusions of law on all issues presented." (2017 Kan. S. Ct. R. 224). The purpose of this rule is to enable meaningful appellate review. *Harris v. State*, 31 Kan. App. 2d 237, 239, 62 P.3d 672 (2003). Whether the district court's findings of fact and law comply with Supreme Court Rule 183(j) is a question of law subject to unlimited review. *Robertson v. State*, 288 Kan. 217, 232, 201 P.3d 691 (2009).

Here, the district court's motion minutes order clearly states why the court denied Gholston's K.S.A. 60-1507 motion—it was untimely and he did not establish manifest injustice. This court has previously held that such a ruling complies with Supreme Court Rule 183(j). *Hutton v. State*, No. 112,862, 2016 WL 368066, at *4 (Kan. App. 2016) (unpublished opinion) ("[T]he district court's order denying Hutton's motion stated: 'Motion denied, untimely, failed to show any manifest injustice.' The district court made it clear that it was denying the motion because it was untimely and Hutton had not shown manifest injustice to extend the time limit of K.S.A. 60-1507[f]."), *rev. denied* 305 Kan. 1251 (2017). The district court supplemented its ruling by referencing the State's response. Clearly, the district court felt that the State had adequately described why Gholston failed to establish manifest injustice.

4

It is unnecessary to remand for further findings of fact and law, as Gholston requests. Even if the district court had not complied with Supreme Court Rule 183(j), remand would not necessarily be required. When the district court summarily denies a K.S.A. 60-1507 motion, an appellate court conducts de novo review to determine whether the motion, files, and records of the case conclusively establish that the movant is not entitled to relief. *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014). This court can still review the dismissal, "even though it might take longer than it would if the district court had provided its own analysis, as required by Rule 183(j)." *Burden v. State*, No. 114,738, 2016 WL 7324420, at *2 (Kan. App. 2016) (unpublished opinion); see also *Tappendick v. State*, No. 113,404, 2016 WL 937861, at *4 (Kan. App. 2016) (unpublished opinion) ("If, however, the failure to comply does not impede appellate review, remand is unnecessary."), *rev. denied* 306 Kan. ___ (April 19, 2017).

Gholston also takes issue with the district court's findings on his subsequent motion to alter or amend. The court's ruling on this motion states that the motion was overruled for the reasons set forth in the State's response. On appeal, Gholston asks: "What Response by the Respondent was adopted by the district court? Was it the Response to the original petition? Was it the Response to Mr. Gholston's Motion to Alter or Amend Judgment?" Common sense would suggest that the district court was incorporating the State's response to Gholston's motion to alter or amend judgment, as this is the motion upon which the district court was ruling. The State filed a comprehensive response to Gholston's motion to alter or amend—it provides a sufficient basis for appellate review. Regardless, this court has previously held that "[t]he plain language of Rule 183(j) does not support the application of Rule 183(j) to a motion to reconsider." *Logan v. State*, No. 115,083, 2017 WL 543519, at *3 (Kan. App.) (unpublished opinion), *rev. denied* 306 Kan. ___ (August 24, 2017). This is because "Rule 183(j) does not mention motions to reconsider. Instead, the language requiring a district court to make findings of fact and conclusions of law immediately follows the heading 'Judgment.'" 2017 WL 543519, at *3.

5

The district court's ruling was adequate to enable appellate review of Gholston's claims. Thus, remand for further findings of fact and conclusions of law is not necessary.

*The district court did not err by finding that Gholston failed to establish manifest injustice to extend the one-year filing deadline.*

When the district court summarily denies a K.S.A. 60-1507 motion, an appellate court conducts de novo review to determine whether the motion, files, and records of the case conclusively establish that the movant is not entitled to relief. *Sola-Morales*, 300 Kan. at 881.

K.S.A. 2016 Supp. 60-1507(f)(1) requires movants to adhere to a one-year time limit. The time limit "may be extended by the court only to prevent a manifest injustice." K.S.A. 2016 Supp. 60-1507(f)(2). K.S.A. 2016 Supp. 60-1507(f)(2)(A) states that a court's manifest injustice inquiry is limited "to determining why the prisoner failed to file the motion within the one-year time limitation or whether the prisoner makes a colorable claim of actual innocence." Gholston argues that the district court erred in not finding that manifest injustice existed.

*Reason for Delay*

Gholston asserts that he provided a valid reason to the court for failing to file within one year. This reason is that his "ability to file this challenge in a timely manner was not possible until present counsel was engaged to explore and review the record and files of the case." Gholston argues that "[t]his has been recognized as a valid basis for delay in filing and overcoming manifest injustice" in *Saleem v. State*, No. 94,945, 2006 WL 3353769 (Kan. App. 2006) (unpublished opinion).

6

Gholston's reliance on *Saleem* is misplaced. Rah-Maan Saleem filed a successive and untimely K.S.A. 60-1507 motion. Courts generally do not consider successive K.S.A. 60-1507 motions but may do so where "'the ends of justice would . . . be served by reaching the merits of the subsequent application.'" 2006 WL 3353769, at *13 (quoting Supreme Court Rule 183[d][3] [2005 Kan. Ct. R. Annot. 228]). Saleem's first K.S.A. 60-1507 motion was filed pro se and did not articulate actionable claims that would warrant an evidentiary hearing. Saleem's second, successive motion was filed with the assistance of counsel, and counsel was able to "raise[] factual allegations which appear[ed] to be actionable." 2006 WL 3353769, at *12. The *Saleem* court held that Saleem's motion should not be denied as successive because the ends of justice would be served by reaching the merits of his claims. 2006 WL 3353769, at *13. The *Saleem* court affirmed the district court's finding that Saleem showed manifest injustice because he made "colorable claims of ineffective assistance of counsel." 2006 WL 3353769, at *11.

Gholston notes that "[t]he issues raised in Mr. Saleem's successive and untimely motion occurred because he had finally had assistance of counsel to bring these matters before the court." He uses *Saleem* to argue that failure to consult with counsel is a valid reason for not filing a K.S.A. 60-1507 motion within the time limit. However, this argument mischaracterizes the *Saleem* holding. The *Saleem* court did not permit the untimely and successive motion because Saleem had counsel; it allowed Saleem to proceed because he made colorable claims. 2006 WL 3353769, at *11.

Kansas' caselaw shows that ignorance of the law is not a valid reason to delay filing a K.S.A. 60-1507 motion. In *Wilson v. State*, No. 106,815, 2012 WL 5519182, at *5 (Kan. App. 2012) (unpublished opinion), Willie Wilson argued "that manifest injustice [could] be found where his long-term incompetency, learning disability, inability to read or write, and pro se status prevented him from timely filing his K.S.A. 60-1507 motion." The Court of Appeals denied Wilson's claims on procedural grounds

7

but also addressed his substantive arguments. The court cited a number of cases that showed that these were insufficient bases to support a finding of manifest injustice:

> "In numerous unpublished opinions, this court has held that a movant's pro se status is insufficient to excuse his or her failure to abide by the 1-year filing deadline of K.S.A. 60-1507(f). See, *e.g.*, *Patterson v. State*, No. 106,149, 2012 WL 2924608, at *4 (Kan. App. 2012) (finding that pro se K.S.A. 60-1507 movants are in the same position as all other pro se civil litigants and must be aware of and follow the rules of civil procedure), *petition for rev. filed* August 13, 2012. This court has also found that a movant's communication difficulties were insufficient to show manifest injustice. *Pacheco v. State*, No. 100,656, 2009 WL 3172783, at *2 (Kan. App. 2009) (unpublished opinion) (finding that movant's language barrier did not justify extension of 1-year filing deadline where movant failed to allege any specific instance of manifest injustice resulting from the language barrier), *rev. denied* 290 Kan. 1094 (2010). Finally, this court has found that a movant's mental disease or defect not reaching the level of incompetency was insufficient to show manifest injustice. *Riggle v. State*, No. 105,691, 2012 WL 2045352, at *2 (Kan. App. 2012), *petition for rev. filed* July 2, 2012.

> "These cases are consistent with federal courts' approach to determining whether a movant has demonstrated 'rare and exceptional circumstances' that justify equitable tolling of the 1-year statute of limitations on federal habeas corpus actions. See, *e.g.*, *United States v. Sosa*, 364 F.3d 507, 512-13 (4th Cir. 2004) (stating that federal courts generally apply equitable tolling based on a movant's mental condition only in cases of profound mental incapacity, such as institutionalization or adjudged mental incompetence); *Turner v. Johnson*, 177 F.3d 390, 391-92 (5th Cir.), *cert. denied* 528 U.S. 1007 (1999) (finding that neither a petitioner's unfamiliarity with the legal process, whether due to illiteracy or any other reason, nor his lack of legal representation during the filing period merit equitable tolling). Therefore, Wilson's long-term incompetency, learning disability, inability to read or write, and pro se status are not sufficient bases for a finding of manifest injustice." 2012 WL 5519182, at *5-6.

Here, like in *Wilson*, Gholston's failure to understand the nature of his claims does not support a finding of manifest injustice. Gholston does not cite any caselaw other than

8

*Saleem* to support his argument that his failure to obtain counsel excuses his 14-year delay in filing his K.S.A. 60-1507 motion. The district court did not err in finding that Gholston's ignorance of the law did not establish manifest injustice.

### Colorable Claim of Actual Innocence

Gholston argues that he makes a colorable claim of actual innocence because he "would testify that he is innocent of the crime." This is inadequate to establish manifest injustice. Allowing K.S.A. 60-1507 movants to evade the time limitation by merely saying that they are innocent would eviscerate the time limit. A movant must provide evidence "to show it is more likely than not that no reasonable juror would have convicted the prisoner in light of new evidence." K.S.A. 2016 Supp. 60-1507(f)(2)(A). Gholston has not met that bar here. See *State v. Olds*, No. 112,576, 2015 WL 6456511, at *3 (Kan. App. 2015) (unpublished opinion) (refusing to find that manifest injustice exists when a K.S.A. 60-1507 movant makes only a conclusory statement that he is actually innocent).

### Substantial Issue of Law or Fact

In his manifest injustice argument, Gholston heavily relies on his assertion that the jury issue raised in his K.S.A. 60-1507 motion presents an issue of law or fact substantial enough to satisfy the manifest injustice standard. This factor was approved by our Supreme Court in *Vontress v. State*, 299 Kan. 607, 616, 325 P.3d 1114 (2014). When conducting the manifest injustice inquiry, the *Vontress* court said that courts should consider whether "the merits of the movant's claim raise substantial issues of law or fact deserving of the district court's consideration . . . ." 299 Kan. at 616. However, the legislature recently amended K.S.A. 60-1507(f) and limited the manifest injustice inquiry. Now, courts no longer consider the merits of a movant's claims. See K.S.A. 2016 Supp. 60-1507(f)(2). The inquiry is limited to considering the movant's reason for delay

9

in filing within the time limitation or whether the movant presents a colorable claim of actual innocence. K.S.A. 2016 Supp. 60-1507(f)(2). Gholston does not have an adequate reason for delay, nor does he present a colorable claim of actual innocence, so under K.S.A. 2016 Supp. 60-1507(f)(2), he fails to establish manifest injustice. The State argues that the new, narrower manifest injustice inquiry of K.S.A. 2016 Supp. 60-1507(f) applies retroactively and that this court does not need to consider the substance of Gholston's claims. Gholston does not address the retroactivity of K.S.A. 2016 Supp. 60-1507(f).

Although there are no published opinions on this issue, this court has issued several unpublished opinions that have applied K.S.A. 2016 Supp. 60-1507(f) retroactively. *Olga v. State*, No. 115,334, 2017 WL 840296, at \*3 (Kan. App. 2017) (unpublished opinion), *petition for rev. filed* April 3, 2017; *Perry v. State*, No. 115,073, 2017 WL 462659, at \*3 (Kan. App. 2017) (unpublished opinion), *petition for rev. filed* March 3, 2017; *State v. Phoenix*, No. 115,694, 2017 WL 1826048, at \*3 (Kan. App. 2017) (unpublished opinion), *petition for rev. filed* June 5, 2017. The first case to address the issue was *Perry*. The *Perry* court cited the general rule a statute operates retroactively if "the change is procedural or remedial in nature." 2017 WL 462659, at \*3. The court held that the amendment was procedural, and not substantive, because "[t]he amendment does not bar 1507 motions based on manifest injustice, it simply limits the district court's inquiry when determining whether manifest injustice exists." 2017 WL 462659, at \*3.

The *Perry* court also discussed the rule that a statute cannot "be applied retroactively if it would prejudicially affect a party's substantive or vested rights even if the legislature intended for it to apply retroactively." 2017 WL 462659, at \*3. Three factors guide the consideration of whether a party's substantive or vested rights are violated: "(1) the nature of the rights at stake (*e.g.*, procedural, substantive, remedial), (2) how the rights were affected (*e.g.*, were the rights partially or completely abolished by the legislation; was any substitute remedy provided), and (3) the nature and strength of

10

the public interest furthered by the legislation." *Resolution Trust Corp. v. Fleischer*, 257 Kan. 360, 369, 892 P.2d 497 (1995). The nature of the amendment was procedural. The rights were not completely abolished, because "the amendment only partially limits the inquiry for determining whether manifest injustice exists." *Perry*, 2017 WL 462659, at *3. And the public interest is furthered by the legislation because "considering whether the movant raised substantial issues of law or fact deserving of consideration would essentially negate the time limitation of K.S.A. 2016 Supp. 60-1507(f)(1)." 2017 WL 462659, at *3. The *Olga* and *Phoenix* courts utilized similar rationale and each held that the K.S.A. 2016 Supp. 60-1507(f) amendment applied retroactively.

The *Perry*, *Olga*, and *Phoenix* opinions are unpublished, but their reasoning is persuasive. Accordingly, we hold that the district court did not err by failing to consider whether Gholston's claims raised a substantial issue of law or fact.

*Gholston's substantive claims are unpersuasive.*

Even if the court were to consider the substance of Gholston's motion, his claims do not establish manifest injustice.

*The 11-person jury*

Gholston's primary contention is that the district court violated his right to a 12-person jury. The district court dismissed a juror due to a family emergency. The district judge, prosecutor, and defense counsel met to discuss, as the judge put it, "how to proceed without—how to proceed with 11 jurors, whether we would go for another juror or anything like that." Gholston's attorney also discussed the right to a jury with Gholston privately. Gholston chose to proceed with only 11 jurors. He executed a waiver of right to jury of 12, which stated that he had consulted with his attorney and been informed of his "right to demand that this case be heard by twelve jurors" and that he chose to "give up

that right and . . . agree to proceed with this trial with eleven jurors." Before accepting the waiver, the district judge also informed Gholston of his right to a 12-person jury. The judge asked Gholston again if he wanted to forfeit his right to a 12-person jury and continue with the 11 remaining jurors. Gholston replied affirmatively, so the district judge accepted his waiver.

Gholston's argument is that the court misled him by telling him that he could continue with a jury of 11 or "'go for another juror'" because "[t]here was absolutely no way that the court could 'go for another juror.'" He also argues that the district court erred by not fully discussing the jury waiver issue with Gholston. Gholston relies on *State v. Simpson*, 29 Kan. App. 2d 862, 32 P.3d 1226 (2001), to support his argument.

In *Simpson*, this court remanded Kapelle Simpson's case for a new trial after finding that he did not knowingly and voluntarily waive his right to a 12-person jury. 29 Kan. App. 2d at 869. In that case, the court had the following discussion with Simpson before deciding to proceed with 11 jurors:

> "'THE COURT: All right. On to another matter, I've received a communication from the jury coordinator that one of the jurors is very ill . . . . And I've asked both counsel if they have any objection to proceeding with 11 jurors. I assume the State has no objection.
> "'MR. MAGANA: That's correct, Your Honor.
> "'THE COURT: And Ms. Nolan, you've indicated you and your client have no objection; is that correct?
> "'MS. NOLAN: That's correct, Your Honor.
> "'THE COURT: Now, Mr. Simpson, I assume that's true, you have no objection; is that right?
> "'THE DEFENDANT: Yes.
> "'THE COURT: Yes, you have no objection?
> "'THE DEFENDANT: Yes, no objection.
> "'THE COURT: And you've also written that out here; is that correct?

12

"'THE DEFENDANT: That's correct.

"'THE COURT: And you've signed and dated it on this date; is that correct?

"'THE DEFENDANT: That's correct.

"'THE COURT: Then we are going to proceed with 11 jurors.'" 29 Kan. App. 2d at 866.

Simpson argued that he did not knowingly and voluntarily waive his right to a 12-person jury because "the trial court did not personally convey to him that he had a right to a 12-member jury." 29 Kan. App. 2d at 867. The Court of Appeals agreed with Simpson. It noted that "[o]ur Supreme Court has found the waiver of a jury trial to be intelligent even though the trial court's colloquy with the defendant was brief, provided that the trial court informed the defendant that he or she had a right to a jury trial." 29 Kan. App. 2d at 868. The court held that "[s]uch an advisement did not occur in this case because the trial court merely asked Simpson whether he objected to an 11-person jury. Asking Simpson whether he objected to an 11-member jury falls far short of advising him of his right to a jury of 12 jurors." 29 Kan. App. 2d at 869. The court concluded:

"At the very least, the trial court was required to advise Simpson of his right to a 12-person jury. The trial court should have also explained to Simpson that he had the option of continuing with an 11-member jury or opting for a mistrial. Because the trial court failed to advise Simpson of his right to a 12-person jury, he did not possess the necessary information to make a knowing and voluntary waiver of that right." 29 Kan. App. 2d at 869.

Gholston's case is distinguishable from *Simpson* because the district court did advise Gholston of his right to a jury of 12. The court said: "Mr. Gholston, I want to make sure that you do understand this. You do, of course, have a right to have a jury of 12 hear this matter." The court also asked Gholston if he wanted "to go ahead and give up [his] right to have a jury of 12" and have his case heard by the 11 remaining jurors.

13

Gholston asserts that the district court made a misrepresentation to him when it said that they could "'go for another juror.'" Saying that the parties could "go for another juror" is not a misrepresentation—Gholston had the right to ask for another juror, and if he had the court would have declared a mistrial. Additionally, the district judge was not directly addressing Gholston when it made the "go for another juror" comment. She was summarizing a discussion she had with counsel about "how to proceed with 11 jurors, whether we would go for another juror or anything like that."

Because K.S.A. 2016 Supp. 60-1507 excludes the consideration of a movant's substantive claims from the manifest injustice inquiry, the district court did not err when it failed to find manifest injustice existed on the basis of Gholston's jury issue. But even if the judge had considered the merits, the issue does not present a substantial issue of law or fact that could establish manifest injustice.

*Retroactivity of* Alleyne

Gholston also argues that "[t]he district court erred in not recognizing that the reasonable doubt component of the rule of *Alleyne* is retroactively applicable to all prior Kansas Hard 40 and Hard 50 sentences." *Alleyne* held that "facts that increase mandatory minimum sentences must be submitted to the jury . . . ." 133 S. Ct. at 2163. If *Alleyne* were retroactively applied, Gholston would be entitled to resentencing because a judge, not a jury, found the facts necessary to sentence him to a hard 40 sentence.

But in the time since Gholston filed his appeal, the Kansas Supreme Court determined that *Alleyne* was not retroactively applicable. *Kirtdoll v. State*, 306 Kan. 335, Syl. ¶ 1, 393 P.3d 1053 (2017). Damon Vontress recently filed a K.S.A. 60-1507 motion making the same argument as Gholston—that his hard 40 sentence was illegal under *Alleyne*. *State v. Vontress*, No. 113,357, 2017 WL 2063006 (Kan. 2017) (unpublished opinion). The Kansas Supreme Court rejected Vontress' argument, stating "[h]is case was

14

final when *Alleyne* was decided; he cannot take advantage of *Alleyne*'s new rule of law; and he cannot get relief from his hard 40 life sentence." *Vontress*, 2017 WL 2063006, at *2.

> *The application of* Montgomery v. Louisiana, *577 U.S. ___, 136 S. Ct. 718, 193 L. Ed. 2d 599 (2016)*

Finally, Gholston argues that "[t]he district court failed to assess the application of *Montgomery v. Louisiana* to [his] case."

Gholston argues that because an illegal sentence can be challenged at any time, the time limitation of K.S.A. 60-1507(f) is inapplicable to his claim that his hard 40 sentence was illegal. See K.S.A. 22-3504(1) (court may correct an illegal sentence at any time). However, the statute goes on to define illegal sentence and clarifies that "[a] sentence is not an 'illegal sentence' because of a change in the law that occurs after the sentence is pronounced." K.S.A. 22-3504(3), as amended by L. 2017, ch. 62, § 9. Gholston's argument is based on a change in the law that occurred after his sentence was pronounced. So, insofar as he argues his sentence is an illegal sentence, it is not the type of illegal sentence that can be corrected through an untimely K.S.A. 60-1507 motion.

Even if Gholston had established manifest injustice, his claim would fail on the merits. Gholston argues that his hard 40 sentence is illegal under *Montgomery* and *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012). In *Miller*, the United States Supreme Court held that mandatory life imprisonment without parole for persons who were juveniles at the time of their crimes violates the Eighth Amendment's prohibition on cruel and unusual punishment. 567 U.S. at 489. *Montgomery* held that the *Miller* rule was retroactive for the purposes of state collateral review. *Montgomery*, 136 S. Ct. at 732, 736. Gholston argues that his sentence is the equivalent of a life sentence without parole and that it is prohibited by *Miller* and *Montgomery*.

15

The problem with applying *Miller* and *Montgomery* to Gholston's case is that *Miller* was dealing with sentencing schemes that mandated life in prison for juveniles without the possibility of parole. *Miller*, 567 U.S. at 466, 469, 489. Gholston was not sentenced to mandatory life imprisonment without parole. Gholston was sentenced to life imprisonment with the possibility of parole after 40 years. Furthermore, *Miller* did not prohibit all life sentences for juveniles. Its holding was limited to finding "that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." 567 U.S. at 479. Courts still have discretion to sentence juveniles to life without parole for first-degree murder without violating the Eighth Amendment. *Miller*, 567 U.S. at 480 ("Although we do not foreclose a sentencer's ability to make that judgment in homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison."). Gholston's case did not involve a mandatory sentencing scheme. Rather, the court had to find that one or more aggravated circumstances existed and that mitigating circumstances did not outweigh the aggravating ones. K.S.A. 21-4635(c) (Furse 1995).

In sum, Gholston's claim fails on multiple grounds. He did not establish manifest injustice necessary for the district court to consider the substance of his untimely motion. And, even if he had shown manifest injustice, his claims would have failed.

Affirmed.

16