No. 127,118

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

A.S.,
*Appellant/Cross-appellee,*

v.

VINEYARD CHURCH of OVERLAND PARK d/b/a VINEYARD COMMUNITY CHURCH,
VINEYARD USA, and MARK WARNER,
*Appellees,*

and

ROBERT BLOOM,
*Appellee/Cross-appellant.*

SYLLABUS BY THE COURT

1.

The general rule is that a statute operates prospectively unless (1) the statutory language clearly indicates the Legislature intended the statute to operate retroactively, or (2) the statutory change is procedural and does not prejudice the vested rights of the parties.

2.

The 2023 legislative amendment to the statute of limitations contained within K.S.A. 2023 Supp. 60-523 is subject to prospective application only. The plain language of K.S.A. 2023 Supp. 60-523 does not reflect that the Legislature intended for its modification to operate retroactively.

1

3.

While an amendment to a statute of limitations constitutes a procedural modification, retroactive application of procedural statutes is inappropriate if the new legislation eradicates a vested right.

4.

A party with an accrued cause of action which has not yet been reduced to a judgment has a vested property right in that cause of action.

5.

An amendment that shortens the statute of limitations cannot be retroactively applied to pending litigation as it unlawfully deprives a party of a vested right in their claim.

6.

The Legislature never intended K.S.A. 2023 Supp. 60-523(c), or its predecessor K.S.A. 60-523(d), to serve as a general retroactivity provision.

Appeal from Johnson District Court; JAMES F. VANO, judge. Submitted without oral argument. Opinion filed June 27, 2025. Reversed and remanded with directions.

*Michael W. Blanton*, of Gerash Steiner Blanton P.C., of Evergreen, Colorado, and *Jill A. Kanatzar* and *Lauren Dollar*, of Dollar, Burns, Becker, & Hershewe L.C., of Kansas City, Missouri, for appellant/cross-appellee.

*Bradley S. Russell* and *Michael K. Hobbs*, of Sanders Warren & Russell LLP, of Overland Park, for appellees Vineyard Church of Overland Park and Mark Warner.

*Brian J. Niceswanger* and *Stephanie A. Preut*, of Evans & Dixon, L.L.C., of Overland Park, for appellee Vineyard USA.

2

*Joel W. Riggs* and *John M. Ross*, of Wallace Saunders, of Overland Park, for appellee/cross-appellant Robert Bloom.

Before ISHERWOOD, P.J., WARNER and COBLE, JJ.

ISHERWOOD, J.: This case concerns the modification the 2023 Legislature made to K.S.A. 60-523(a), the statute of limitations provision governing civil claims arising from allegations of childhood sexual abuse. The precise question before us is what effect, if any, that amendment has on the claim for damages that A.S. filed in 2021 and that was pending at the time of the statutory amendment. The district court retroactively applied the amendment to A.S.'s case and granted the Defendants' motions for summary judgment on the grounds that A.S.'s petition was rendered untimely by the amendment. That decision runs contrary to the long-standing law of this State and cannot be permitted to stand. The district court likewise assessed A.S.'s case under the original statute of limitations and noted it would have denied the Defendants' original request for summary judgment because a question of material fact existed as to when A.S. discovered or reasonably should have discovered that her illnesses manifested as a result of the sexual abuse she suffered. Accordingly, the decision of the district court is reversed, and the case is remanded to resume litigation of A.S.'s claims.

FACTUAL AND PROCEDURAL BACKGROUND

In August 2021, A.S. filed a petition for damages and alleged that she was sexually abused as a child by Robert Bloom, her former youth pastor at Vineyard Church of Overland Park (VCOP). In addition to Bloom, A.S. named VCOP, Vineyard USA (VUSA), and Mark Warner as defendants in her claims of negligence and negligent supervision and training.

3

A.S. asserted that Bloom began sexually abusing her in 1997 when she was 14 years old. A.S. maintained a romantic relationship with Bloom until 2005 when she finally decided to terminate further contact with him; she was 21 years old at that time. Many years later, A.S. sought psychological treatment for anxiety, panic attacks, and depression and came to believe that her illnesses were attributable to the childhood sexual abuse Bloom perpetrated against her.

In March 2023, just shy of two years after A.S. initiated this action, each of the four named defendants moved for summary judgment. The Defendants argued that A.S.'s claims were time barred by the statute of limitations set forth under K.S.A. 2021 Supp. 60-523(a). As support for their contention, the Defendants highlighted the following statutory language:

> "No action for recovery of damages suffered as a result of childhood sexual abuse shall be commenced more than three years after the date the person attains 18 years of age or more than three years from the date the person discovers or reasonably should have discovered that the injury or illness was caused by childhood sexual abuse, whichever occurs later." K.S.A. 2021 Supp. 60-523(a).

It was the Defendants' collective position that A.S. either knew, or reasonably should have known, for more than three years before she filed her petition, that her psychological ailments were the product of Bloom's abuse.

A.S. countered that the record demonstrated the existence of a genuine issue of material fact as to precisely when she discovered or should have discovered that her illnesses arose from the abuse. A.S. also argued that K.S.A. 2021 Supp. 60-523 contemplated a subjective standard, so her own testimony could establish that for more than three years before filing her petition she was unaware her condition was caused by Bloom's abuse.

On July 1, 2023, before the district court could rule on the Defendants' March 2023 summary judgment motions, a legislative amendment went into effect to eliminate the language from K.S.A. 60-523 which marked the discovery of injury or illness as a potential trigger for the statute of limitations. The modified provision read, in pertinent part:

> "No action for recovery of damages for an injury or illness suffered as a result of childhood sexual abuse shall be commenced more than 13 years after the date the victim attains 18 years of age or more than three years after the date of a criminal conviction for a crime described in subsection (b) related to such childhood sexual abuse, whichever occurs later." K.S.A. 2023 Supp. 60-523(a).

VCOP and Warner soon supplemented their original summary judgment motions to highlight the amendment's removal of the window A.S. relied on to timely file her petition. They argued that the amended statute of limitations should be applied retroactively to bar A.S.'s action as untimely, even though her petition was filed two years before that amendment took effect. Soon after, VUSA and Bloom amended their own motions with similar contentions.

A.S. responded that the newly amended statute of limitations did not apply retroactively to an action already timely filed and pending. She further asserted that even if the district court deemed the amended statute applicable, her action was still properly considered timely because Bloom had not yet been convicted of any of the crimes identified in the statute.

The district court adopted the Defendants' position and applied the amended statute retroactively to grant their request for summary judgment. But the court noted that it would have denied their original motions because disputed material facts existed with respect to when A.S. discovered that her illnesses stemmed from Bloom's abuse, and that those facts should be submitted to a jury.

5

A.S. now brings her case before this court for a determination of whether the district court erred in applying the amended statute of limitations retroactively. Bloom cross-appeals, challenging the district court's assertion that it would have denied his original summary judgment motion on the grounds that a material fact existed with respect to when A.S. discovered the link between her illnesses and the abuse.

ANALYSIS

I. *Did the district court err in applying the amended statute of limitations retroactively?*

The key question we must resolve in this case is which version of a statute of limitations controls when that provision is amended during the pendency of litigation. Clarification of this issue is critical because at the most fundamental level, such statutes provide the time frame in which a claim must be raised and dictate when and how that time begins to run. Stated another way, the calculation of time mandated by such statutes could ultimately foreclose a plaintiff's litigation of their claim as evidenced by the district court's decision in this case.

"In an appeal from the district court's ruling on a summary judgment motion, the appellate court considers the motion de novo." *Hammond v. San Lo Leyte VFW Post #7515*, 311 Kan. 723, 727, 466 P.3d 886 (2020). When the appeal involves a statute of limitations, the interpretation and application of that provision presents a question of law over which we exercise unlimited review. *White v. State*, 308 Kan. 491, 498, 421 P.3d 718 (2018); *Smith v. Graham*, 282 Kan. 651, 655, 147 P.3d 859 (2006).

"The guiding principle in statutory interpretation is that legislative intent governs if that intent can be ascertained." *State v. Strong*, 317 Kan. 197, 203, 527 P.3d 548 (2023). To accomplish that task, we begin with an analysis of the plain language of the statute because it stands as the best indicator of legislative intent. *Bruce v. Kelly*, 316 Kan. 218,

6

224, 514 P.3d 1007 (2022). In so doing, we give common words their ordinary meaning but remain mindful of the specific context in which the language appears as well as the overall statutory framework. *Landrum v. Goering*, 306 Kan. 867, 872-73, 397 P.3d 1181 (2017). Only when the statute's language is ambiguous do we turn to canons of construction and legislative history to resolve the ambiguity. *State v. Martin*, 318 Kan. 538, 549, 544 P.3d 820 (2024).

The general rule is that a statute operates prospectively unless (1) the statutory language clearly indicates the Legislature intended the statute to operate retroactively, or (2) the statutory change is procedural and does not prejudice the vested rights of the parties. *Norris v. Kansas Employment Security Bd. of Review*, 303 Kan. 834, 841-42, 367 P.3d 1252 (2016).

The district court conducted an analysis of K.S.A. 60-523 in its entirety and concluded that the language contained within subsection (c) of the provision provided a clear indication that the Legislature intended for its alterations to the statute of limitations to apply retroactively. The district court was satisfied that its chosen course did not result in prejudice to A.S. because statutes of limitations are merely procedural and do not grant vested rights.

Following careful consideration of the statute's evolution, controlling caselaw, and the parties' arguments, we conclude that both prongs of the rule dictate that the 2023 amendment to the statute of limitations in K.S.A. 60-523 is subject to prospective application only. Each component will be addressed in turn.

A. *Does the statutory language clearly indicate that the modified statute of limitations is to apply retroactively?*

Again, A.S. filed her petition in August 2021. At that time, the subsections of K.S.A. 60-523 that are relevant to our inquiry stated as follows:

"(a) No action for recovery of damages suffered as a result of childhood sexual abuse shall be commenced more than three years after the date the person attains 18 years of age or more than three years from the date the person discovers or reasonably should have discovered that the injury or illness was caused by childhood sexual abuse, whichever occurs later.

. . . .

"(d) This section shall be applicable to:

(1) Any action commenced on or after July 1, 1992, including any action which would be barred by application of the period of limitation applicable prior to July 1, 1992;

(2) any action commenced prior to July 1, 1992, and pending on July 1, 1992." K.S.A. 2021 Supp. 60-523.

The 2023 legislative amendment modified those sections to reflect as follows:

"(a) No action for recovery of damages for an injury or illness suffered as a result of childhood sexual abuse shall be commenced more than 13 years after the date the victim attains 18 years of age or more than three years after the date of a criminal conviction for a crime described in subsection (b) related to such childhood sexual abuse, whichever occurs later.

. . . .

8

"(c) This section shall be applicable to any action commenced on or after July 1, 1992, including any action that would be barred by application of the period of limitation applicable prior to July 1, 1992." K.S.A. 2023 Supp. 60-523.

When endeavoring to ascertain whether the amendment applied retroactively, the district court likewise acknowledged the two-part rule we quoted above. It determined that the Legislature's decision to retain a portion of the language in subsection (d) from the 2021 version of the statute as the substance of subsection (c) for the 2023 version indicated that it intended for the modified statute of limitations to apply retroactively. Therefore, because its obligation was to give effect to the statute's express language, when there was no ambiguity, the amendment must be applied "retroactively to pending claims," such as A.S.'s, and "'action[s] commenced on and after'" July 1, 1992.

In challenging the district court's decision, A.S. contends that its conclusion turns a blind eye to the principle that "the statute of limitations in effect at the time an action is filed applies." *Kerns v. G.A.C., Inc.*, 255 Kan. 264, 271, 875 P.2d 949 (1994); see also *Dobson v. Larkin Homes, Inc.*, 251 Kan. 50, 53, 832 P.2d 345 (1992); *Harding v. K.C. Wall Products, Inc.*, 250 Kan. 655, Syl. ¶ 1, 831 P.2d 958 (1992); *Rowland v. Commercial Minerals, Inc.*, No. 70,021, 1994 WL 17120534, at *2 (Kan. App. 1994) (unpublished opinion); *First Finance, Inc. v. Randle*, No. 68,909, 1993 WL 13965830, at *1 (Kan. App. 1993) (unpublished opinion); *In re N.L.B.*, No. 68,084, 1993 WL 13965712, at *2 (Kan. App. 1993) (unpublished opinion). The Defendants assert it is significant that the Legislature undertook the effort to modify and consolidate the body of subsection (d) to establish the new subsection (c). They reason that the Legislature had the opportunity to either plainly state that its 2023 changes did not apply retroactively or wholly eliminate the language from (d). But because it did neither, its formulation of subsection (c) indicates that it clearly intended for the amended statute of limitations to apply retroactively.

9

The first step toward resolving the greater question of which version controls requires us to analyze what, for ease's sake, we will refer to as the "carryover language" between the two provisions. That is, the portion of subsection (d) from 2021 which became subsection (c) with the modification in 2023. A historical analysis of this provision makes clear that the language at issue was carefully drafted at the time of the statute's enactment in 1992 to serve a very particularized purpose, one that is much more definitive than what the district court afforded it here.

To understand the purpose of the disputed language, we must first discuss the impact of both statutes of limitations and statutes of repose. A statute of limitations extinguishes the right to prosecute an accrued cause of action once a specified period of time passes. It can eliminate access to the remedy, or the opportunity to file a cause of action, and possesses both remedial and procedural characteristics. *Harding*, 250 Kan. at 668; see also *Lujan v. Regents of University of California*, 69 F.3d 1511, 1516-17 (10th Cir. 1995) (statutes of limitations have mixed procedural and substantive aspects). By contrast, a statute of repose is a time limit that begins to run when the defendant commits the act complained of—even if the *injury* that a person suffers because of the defendant's conduct does not occur or become known to the person until later. *Doe v. Popravak*, 55 Kan. App. 2d 1, 8, 421 P.3d 760 (2017). That is, it eliminates an injured party's ability to file a claim after the set passage of time even though the cause of action may not have yet been known to that person.

The Legislature has the power to revive actions barred by a statute of limitations provided it specifically expresses its intent to do so through retroactive application of a new law. *Swartz v. Swartz*, 20 Kan. App. 2d 704, 708, 894 P.2d 209 (1995). By contrast, it cannot revive a cause of action already extinguished by a *statute of repose* because with the expiration of that particular period comes a defendant's vested right to that specific time bar as a defense. Accordingly, allowing such claims to be revived simply through the

enactment of a new law would constitute the taking of property without due process. 20 Kan. App. 2d at 708.

Prior to 1992, Kansas did not have a statute of limitations tailored specifically to civil actions for damages arising out of childhood sexual abuse claims. Parties instead relied on the limitations period and statute of repose set forth under K.S.A. 60-515(a), which stated, respectively, that an injured party must file any claims which accrued during their period of minority within one year of turning 18 years old, and that no actions shall be commenced by or on behalf of any minor more than eight years after the commission of the act that gave rise to the cause of action.

The Legislature shifted course in 1992 and enacted K.S.A. 60-523 to specifically address those civil claims attributed to childhood sexual abuse cases. L. 1992, ch. 307, § 1. This new provision included a statute of limitations but no statute of repose, and mandated that such actions must be brought within three years of "the date the person attains 18 years of age" or "the date the person discovers or reasonably should have discovered that [his or her] injury or illness was caused by childhood sexual abuse," whichever is later. K.S.A. 1992 Supp. 60-523(a). At the time of enactment, subsection (d) of the provision extended the reach of the statute to "any action commenced prior to July 1, 1992, and pending on July 1, 1992." K.S.A. 1992 Supp. 60-523(d)(2). The Legislature also amended K.S.A. 60-515 in 1992 to exempt cases that fell under the umbrella of K.S.A. 60-523. L. 1992, ch. 307, § 2. Combined, the enactment of K.S.A. 60-523 and amendment to K.S.A. 60-515 had the effect of lengthening the statute of limitations for childhood sexual abuse cases while eliminating the statute of repose that formerly applied to such actions.

With that overview as our backdrop, we return to the "carryover language." Kansas courts have consistently treated K.S.A. 60-523(d) as a means by which to bridge the gap between K.S.A. 60-523's more favorable three-year statute of limitations and

11

those actions foreclosed by the passage of the one-year statute of limitations under K.S.A. 60-515(a), yet still viable under its eight-year statute of repose. In essence, it is understood that K.S.A. 60-523 operates as a reviving provision that extends its three-year statute of limitations to those claims which would *not* have otherwise been time-barred by K.S.A. 60-515's statute of repose when K.S.A. 60-523 became effective on July 1, 1992. *John Doe v. M.J.*, 59 Kan. App. 2d 273, 277, 482 P.3d 596 (2021), *aff'd* 315 Kan. 310, 508 P.3d 368 (2022). Stated another way, its extended statute of limitations was not available to those actions for damages from abuse that occurred before July 1, 1984, as those claims were extinguished as a matter of law by the eight-year statute of repose promulgated by K.S.A. 60-515(a).

The import of this language was first clarified by our court not long after the enactment of K.S.A. 60-523. In *Swartz*, an adult daughter filed a petition in 1993 seeking damages for childhood sexual abuse. The final act of abuse was committed in 1982; however, the daughter contended that the eight-year statute of repose in K.S.A. 60-515(a) did not begin to run until her injury became reasonably ascertainable in November 1992. This court rejected her argument, noting that the plain language of K.S.A. 60-515 clearly stated "that the injurious act trigger[ed] the eight-year statute of repose." 20 Kan. App. 2d at 707. Accordingly, that window closed in 1990, two years before the enactment of K.S.A. 60-523. Alternatively, the daughter argued that K.S.A. 60-523(d) revived her action. This court rejected that argument as well, noting that while subsection (d) seemingly purported to be applicable to "'*any* action which would be barred by application of the period of limitation applicable prior to July 1, 1992,'" the Legislature only has the authority to revive actions barred by a statute of limitations. (Emphasis added.) 20 Kan. App. 2d at 707-08. And only then if such action is expressly provided for through the retroactive application of a new law. 20 Kan. App. 2d at 708. But the Legislature does not possess the same authority to revive actions barred by the expiration of the statute of repose. In those cases, defendants have a vested right in the defense created by the expiration of that particular time bar. So, reviving those claims would be

taking property without the benefit of due process. 20 Kan. App. 2d at 708. Thus, while statutes of limitations and statutes of repose are both properly classified as periods of limitation, the distinction between them is critical, particularly here.

*Swartz* is significant to our analysis because of the insight it offers into the goal the Legislature intended to accomplish with the inclusion of subsection (d) when drafting K.S.A. 60-523. That is, when it enacted the provision in 1992 and sought to extend its benefits to actions previously barred by the application of a time limitation, its legislative reach was limited to *only* those actions barred specifically by the statute of limitations "applicable prior to July 1, 1992." It was never intended to be a global retroactivity provision as the district court found here. See 20 Kan. App. 2d at 708.

The following year the Kansas Supreme Court further illuminated the operational parameters of K.S.A. 60-523(d). In *Shirley v. Reif*, 260 Kan. 514, 920 P.2d 405 (1996), brothers Jeffrey and Jason Shirley filed an action under K.S.A. 60-523 in 1995 for damages stemming from sexual abuse they suffered at the hands of a priest from 1975 through 1986. It was undisputed that the last abusive act occurred in 1986. 260 Kan. at 518. Under K.S.A. 60-515's statute of limitations, the brothers were required to file their claims within one year of turning 18. Jeffrey's statute of limitations expired on November 15, 1988, while Jason's extended to March 25, 1991. K.S.A. 60-515's eight-year statute of repose expired in 1994. The court had to determine whether K.S.A. 60-523 had the effect of reviving the statute of limitations and "when a claim must be barred by a statute of repose so as to preclude its later revival by 60-523." 260 Kan. at 524. The problem facing the court was that while K.S.A. 60-523 was enacted before the statute of repose expired, the Shirleys' petition was filed after its enactment.

The integral question for the *Shirley* court was whether the plaintiffs' claims were already barred by K.S.A. 60-515's statute of repose in 1992 when K.S.A. 60-523 was enacted. 260 Kan. at 524. The court instructed that for those claims where the statute of

repose is running but not yet expired in 1992, that timing limitation may be eliminated entirely by K.S.A. 60-523(d) without adversely impacting a defendant's due process protections because a defendant cannot claim a vested right in a *nonexpired* statute of repose. 260 Kan. at 524-25. Rather, once the dead claim under K.S.A. 60-515(a)'s *statute of limitations* is revived by K.S.A. 60-523, the plaintiff has a brand new statute under which to bring the suit—K.S.A. 60-523. By way of refresher, at that time the provision allowed a party to file a claim for damages from childhood sexual abuse within three years after they reasonably discovered (defined broadly) their injury was caused by such abuse. If the injured party filed the revived damages claim within that three-year period, then the claim was considered timely filed. Accordingly, the *Shirley* court found that K.S.A. 60-523(d) can apply retroactively upon its enactment to revive a claim in 1992 but only when the statute of repose has not expired. 260 Kan. at 525.

The Kansas Supreme Court issued *Ripley v. Tolbert*, 260 Kan. 491, 921 P.2d 1210 (1996), the same day *Shirley* was handed down. In that case, Ripley was 50 years of age when she recalled repressed memories of sexual abuse she suffered as a child. She filed a petition for damages within three years of the emergence of those memories and asserted that K.S.A. 60-523 applied to revive her claim. The district court granted the defendants' motion to dismiss, citing *Swartz*, and found that Ripley's claims were barred by the eight-year statute of repose in K.S.A. 60-515(a). 260 Kan. at 492-93. Ripley appealed but to no avail. The Supreme Court reaffirmed that through the enactment of K.S.A. 60-523(d), "the legislature specifically expressed its intent that the statute operate retroactively and revive any action barred by a period of limitation prior to July 1, 1992, specifically if the action is barred by K.S.A. 60-515(a) prior to 1992." 260 Kan. at 501. Thus, Ripley's claims were clearly barred by the statute of repose in K.S.A. 60-515(a) and, where the defendants had a vested right in that defense, the claims could not be revived through operation of K.S.A. 60-523(d). 260 Kan. at 511-12.

14

Unlike *Shirley* and *Ripley*, the formula set forth at what is now K.S.A. 60-523(c) after the 2023 amendment, and its underlying justification, have no application to A.S.'s case given that abusive acts were not perpetrated against her until 1997. That is, there is not any pre-1992 conduct to attempt to bring within the scope of K.S.A. 60-523.

In the decades following *Shirley* and *Ripley*, Kansas courts have not wavered in their stance with respect to the goal intended to be served by the Legislature's inclusion of the language at issue. For example, in *Doe v. St. Benedict's Abbey*, No. 98,675, 2008 WL 3368248, at *7 (Kan. App. 2008) (unpublished opinion), this court determined that because Doe's claims were barred by the statute of repose in 1985, the enactment of K.S.A. 60-523 in 1992 could not revive Doe's claims. Similarly, in *Doe v. Popravak*, this court observed that the three-year statute of limitations under K.S.A. 60-523 extends to causes of action that "'would be barred' under 'the period of limitation applicable prior to July 1, 1992,'" and "[t]he reason for the July 1, 1992, date is that this statute was originally enacted in 1992." 55 Kan. App. 2d at 10. Several years later, this court again found that the extended limitations period in K.S.A. 2019 Supp. 60-523(d) only applies to claims that would not have been otherwise time-barred when that statute became effective on July 1, 1992. *John Doe v. M.J.*, 59 Kan. App. 2d at 277. Thus, the longer statute of limitations available for claims brought under K.S.A. 2019 Supp. 60-523(d) did not apply to acts that occurred before July 1, 1984, as those claims were extinguished as a matter of law under K.S.A. 60-515(a) before K.S.A. 2019 Supp. 60-523(d) was enacted. 59 Kan. App. 2d at 277. The Kansas Supreme Court accepted review of *John Doe v. M.J.* and likewise ultimately noted that through the operation of subsection (d) of K.S.A. 2020 Supp. 60-523 its application is limited "to those claims that had not been extinguished by the eight-year statute of repose at the time K.S.A. 60-523 was enacted." *John Doe v. M.J.*, 315 Kan. 310, 314, 508 P.3d 368 (2022).

Again, the fundamental rule of statutory interpretation is that statutes should be construed to determine legislative intent and once such intent is ascertained it should be

15

given effect. *State v. Sisk*, 266 Kan. 41, 43-44, 966 P.2d 671 (1998); *Bayless v. List & Clark Construction Co.*, 201 Kan. 572, 575, 441 P.2d 841 (1968). In short, the district court here viewed the retroactivity language in K.S.A. 60-523(d) through too wide a lens. Rather, consistent with the legislative intent, historical background, and the language used, the retroactive application of K.S.A. 60-523 is only triggered in a highly particularized context, and this case does not fall within those parameters. The first abusive acts alleged to have occurred here were not even committed until 1997, well after the statute's enactment in 1992. The retroactivity language contained under subsection (c) simply is not applicable to A.S.'s case.

A reasonable parallel may also be drawn with *State v. Coleman*, 311 Kan. 332, 460 P.3d 828 (2020), where a retroactive application question surrounded K.S.A. 2017 Supp. 22-3716(c)(12), which stated that the intermediate sanctions for probationers outlined under subsection (c) applied to any probation violation occurring on or after July 1, 2013. In that case, the district court revoked Coleman's probation, without first exhausting the intermediate sanctions, in reliance on a statutory exception that allowed the court to do so when the person received probation as a result of a dispositional departure. See K.S.A. 2017 Supp. 22-3716(c)(9)(B). The dispositional departure exception became effective on July 1, 2017. See L. 2017, ch. 92, § 8. Our Supreme Court determined that the dispositional departure exception could not be applied retroactively despite the language in K.S.A. 2017 Supp. 22-3716(c)(12) that seemingly indicated otherwise. 311 Kan. at 336-37. The *Coleman* court explained:

> "'Generally, a statute operates prospectively unless there is clear language indicating the legislature intended it to operate retrospectively.' When it was adopted, the language of (c)(12) operated as an effective date provision for the graduated sanctions statutory amendment enacted in 2013. Subsection (c)(12) did not express an intent for subsection (c)(9)(B) to operate retrospectively because (c)(9)(B) did not then exist. Subsection (c)(9)(B) was not adopted until July 1, 2017. Thus, (c)(12) is an effective date

16

provision which cannot function as 'clear language indicating the legislature intended' (c)(9)(B) to operate retrospectively. [Citations omitted.]" 311 Kan. at 337.

See also *State v. Churchill*, No. 118,821, 2019 WL 1087352, at *4 (Kan. App. 2019) (unpublished opinion) (holding that 2016 amendment to juvenile decay rules in K.S.A. 21-6810 did not apply retroactively despite express language in the statute that prior amendments were intended to apply retroactively).

The same reasoning applies here. Because the retroactivity language now found in K.S.A. 60-523(c) was enacted to achieve a particular goal for select cases, it cannot be relied upon here as a clear indication that the Legislature intended the 2023 amendments to the statute of limitations to operate retroactively.

This case offers a very clear example that when the Legislature has an express purpose in mind, it will craft language to achieve that desired objective. Thus, had it intended for the 2023 amendment to the statute of limitations to apply retroactively to pending cases, it could have accompanied the amendment with language that made those intentions undeniably clear. See, e.g., *In re Tax Appeal of American Restaurant Operations*, 264 Kan. 518, 525, 957 P.2d 473 (1998) (The language of subsection [c] clearly indicates that the Legislature intended the amended version of K.S.A. 79-1427a to operate retroactively.); *John O. Farmer, Inc. v. Board of Ellis County Comm'rs*, 62 Kan. App. 2d 262, 271, 511 P.3d 293 (2022) (The Legislature clearly intended the property exemption under K.S.A. 79-213[j] to apply retroactively by allowing taxpayers to claim it on the first date their oil and gas leases qualified.); *State v. Maples*, No. 116,366, 2018 WL 1127568, at *11 (Kan. App. 2018) (unpublished opinion) (When the Legislature amended K.S.A. 21-6810[e] in 2017 it clearly indicated that the retroactivity provision of that subsection should only be applied to the 2015 amendment.); see also K.S.A. 2019 Supp. 21-6810(e) ("The amendments made to this section by section 1 of chapter 5 of the 2015 Session Laws of Kansas are procedural in nature and shall be construed and applied

retroactively."). But it did not. The district court was not free to read language into the provision to achieve an objective different from that expressed by the Legislature.

For these reasons, we conclude there is no clear indication contained within K.S.A. 2023 Supp. 60-523 that the Legislature intended the 2023 amendment to apply retroactively to A.S.'s pending litigation. Accordingly, the district court erred in finding that the plain language of K.S.A. 2023 Supp. 60-523(c) offered justification for applying the modified statute of limitations retroactively to grant the Defendants' motions for summary judgment and terminate A.S.'s pending claims.

B. *Does retroactive application of the modified statute of limitations to A.S.'s pending litigation adversely affect a vested right?*

With the first phase of the inquiry closed, we move to the second prong of the analysis, which essentially consists of two parts—a statute operates prospectively unless the statutory change is procedural *and* does not prejudice the vested rights of the parties. *Norris*, 303 Kan. at 841-42. This step essentially indicates that although an amendment to a statute of limitations is procedural in nature such a change does not have a retroactive effect if it eradicates a vested right. *White*, 308 Kan. at 499; see also *Brennan v. Kansas Insurance Guaranty Ass'n*, 293 Kan. 446, 460, 264 P.3d 102 (2011) (retroactive application of procedural statutes is inappropriate if new legislation affects a vested right); *Owen Lumber Co. v. Chartrand*, 276 Kan. 218, 225, 73 P.3d 753 (2003) ("[W]hile we have applied the general rule that a legislature may retrospectively modify the remedies by which rights are enforced, we have not done so when the modification has the practical effect of abrogating the right."). We have no quarrel with the district court's conclusion that the 2023 amendment is properly classified as procedural because it modified a statute of limitations. But as explained in greater detail by our analysis below,

we find it erred in retroactively applying that procedural amendment to A.S.'s pending case because to do so resulted in prejudice to her vested rights.

The term "vested rights" refers to those rights that cannot be abolished by retroactive legislation. *Brennan*, 293 Kan. at 460. It has long been recognized that the designation contemplates something conclusory—"'a right is vested when it has been so far perfected that it cannot be taken away by statute.'" *Resolution Trust Corp. v. Fleischer*, 257 Kan. 360, 364, 892 P.2d 497 (1995) (quoting Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation*, 73 Harv. L. Rev. 692, 696 [1960]). As touched upon in the previous section, retroactive legislation that impairs a party's vested rights constitutes the taking of property without the benefit of due process. *Southwestern Bell Tel. Co. v. Kansas Corporation Comm'n*, 29 Kan. App. 2d 414, 423, 29 P.3d 424 (2001).

When endeavoring to resolve the second part of the inquiry, the district court turned to the three-factor test frequently employed by Kansas courts to ascertain whether legislation impacted a vested right:

> "'(1) the nature of the rights at stake (*e.g.*, procedural, substantive, remedial), (2) how the rights were affected (*e.g.*, were the rights partially or completely abolished by the legislation; was any substitute remedy provided), and (3) the nature and strength of the public interest furthered by the legislation." *Owen Lumber Co.*, 276 Kan. at 222.

In applying these factors, courts are required to balance the first factor against the others. *Brennan*, 293 Kan. at 462.

The district court concluded that (1) the right at stake is procedural; (2) the amendment does not eradicate an existing judgment on a claim, and A.S.'s ability to pursue an action against the Defendants is not wholly abolished because in the event

Bloom is ever convicted for any of the sex offenses enumerated under K.S.A. 60-523(b), A.S. may pursue a civil action within the three-year window following Bloom's criminal conviction; and (3) the Legislature acknowledged the public's interest in an available avenue for these claims by enacting an amendment that conditionally extended the time in which an injured party may file their cause of action.

A.S. asserts that the district court reached its conclusion in error because in utilizing the three-factor test, the court neglected to consider the significance of a party's vested right in an accrued cause of action. The Defendants collectively argue that the ruling of the district court was appropriate and should be upheld.

We find A.S. has advanced the better argument. It is unnecessary to undertake an analysis consistent with the three-part test for identifying vested rights because the Kansas Supreme Court has already determined that a party with an accrued cause of action which has not yet been reduced to a judgment has a vested property right in that cause of action. See *Resolution Trust Corp.*, 257 Kan. at 364, 374. In that case, Resolution Trust Corporation (RTC) asserted various causes of action in federal court against former officers and directors of Franklin Savings Association (Franklin). All of RTC's claims were based solely on theories of simple negligence or negligent breach of fiduciary duty. During the 1993 legislative session, while RTC's case was pending, a new law was enacted which served to limit the potential personal liability borne by specific officers and directors of savings and loan associations. 257 Kan. at 361-62. In essence, the Legislature not only overruled the existing law by which those officers and directors could be held liable for negligence and breach of fiduciary duty, but also made the new law applicable "to any action that had not been finally adjudicated" when the statute was enacted, thereby eliminating an accrued and pending tort cause of action. 257 Kan. at 362-63, 366; see K.S.A. 1994 Supp. 9-1133; K.S.A. 1994 Supp. 9-1134; K.S.A. 1994 Supp. 17-5831.

The federal district court observed that if the new law survived constitutional scrutiny, it eliminated the majority of RTC's claims. Several defendants moved for summary judgment and upon finding no clear indication whether an accrued tort cause of action was classified as a vested property right, the district court certified two questions to the Kansas Supreme Court for resolution, only the first of which is relevant to the matter before us. That question sought to determine whether the holder of accrued actions for negligence and breach of fiduciary duty, which have not yet been reduced to judgment, has a vested property right in those causes of action. Our Supreme Court's examination of Kansas law and the law of neighboring jurisdictions yielded an answer favoring RTC. 257 Kan. at 364-74. Thus, RTC's causes of action were designated as "vested property rights" under Kansas law. 257 Kan. at 374.

The court held true to its position nearly 10 years later in *Holt v. Wesley Medical Center*, 277 Kan. 536, 86 P.3d 1012 (2004). In that case, the Holts brought a medical malpractice suit in federal court against several defendants, including the Wichita Center for Graduate Medical Education, Inc. (WCGME). 277 Kan. at 537, 539. During the pendency of the action, the Legislature amended K.S.A. 40-3414(i)(1) under the Health Care Provider Insurance Availability Act and applied it retroactively. L. 2001, ch. 204, § 3. As a result of the amendment, WCGME was brought within the scope of the statutory definition of "health care provider," and thereby insulated from vicarious liability pursuant to K.S.A. 40-3403(h). L. 2001, ch. 204, § 2. In response to the Holts' petition, the federal district court once again submitted a certified question to the Kansas Supreme Court to clarify whether retroactive application of the Legislature's amendments to K.S.A. 40-3401(f) and K.S.A. 40-3403(h) deprived the Holts of a vested property right. 277 Kan. at 537.

The Kansas Supreme Court found that the Holts' cause of action for negligence against WCGME accrued when the alleged negligence occurred in 1998 and at that point constituted a vested property right. 277 Kan. at 542. Thus, retroactive application of the

21

amended version of K.S.A. 40-3414(i)(1) deprived the Holts of a vested property right and violated their right to due process under section 18 of the Kansas Constitution Bill of Rights. 277 Kan. at 548.

The issue was once again before the Supreme Court as recently as 2018 when it was asked to determine whether the 2016 amendment to K.S.A. 60-1507(f) defining the term "manifest injustice" applied retroactively to proceedings commenced with the filing of a motion before the amendment went into effect on July 1, 2016. *White*, 308 Kan. 491. The court acknowledged that K.S.A. 60-1507(f) was previously described as a "statute of limitations." 308 Kan. at 499. It noted that while a statute of limitations is classified as a procedural rule and any changes to such rules typically apply retroactively, that directive does not extend to those situations when the change abolishes a vested right. 308 Kan. at 499. The court extensively analyzed whether retroactive application of the amended version of K.S.A. 60-1507(f) to White's pending action eradicated his vested right to have his untimely motion assessed for manifest injustice under the analytical framework in place prior to the amendment. It ultimately concluded that the amendment did not apply retroactively because to do so deprived White of a vested right. 308 Kan. at 503.

It is our conclusion that A.S.'s claims should be joined to this line of cases. Here, A.S. pursued a cause of action in 2021 for damages arising out of sexual abuse that was allegedly perpetrated against her several years earlier while she was still a minor. The Legislature amended the statute of limitations two years after A.S. filed her claims and while her litigation was actively pending. We find that as with the plaintiffs in *Resolution Trust Corp.*, *Holt*, and *White*, A.S. likewise had a vested right in her causes of action. Accordingly, the amended statute of limitations could not be retroactively applied to her case lest it unlawfully eliminate her claims. "Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; *settled expectations should not be lightly disrupted*." *Landgraf v. USI Film Products*, 511 U.S. 244, 265, 114 S. Ct. 1483, 128 L. Ed. 2d 229

(1994). (Emphasis added). For that reason, the "principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal." *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 855, 110 S. Ct. 1570, 108 L. Ed. 2d 842 (1990) (Scalia, J., concurring).

On the facts of her petition, A.S. arguably filed her case within the then-governing statute of limitations and was actively litigating the case at the time of the legislative amendment. Thus, a vested right in that cause of action crystallized and she could not be stripped of that right without suffering prejudice.

To be sure, we would arrive at the same conclusion even if we followed the analytical pathway taken by the district court and filtered A.S.'s case through the three-part test from *Owen Lumber Co*. Again, the first step of that inquiry requires a determination of whether the right at issue is procedural or substantive. 276 Kan. at 225. As established by our extensive foregoing analysis, the right that A.S. brings to us for consideration is properly classified as substantive. See *Resolution Trust Corp.*, 257 Kan. at 367.

With the nature of the right clarified, the next step asks us to analyze the extent to which that right was impacted by the district court's application of the amended statute of limitations and whether a substitute remedy was provided. *Owen Lumber Co.*, 276 Kan. at 225.

Again, following the amendment the statute of limitations consisted of the following parameters:

> "No action for recovery of damages for an injury or illness suffered as a result of childhood sexual abuse shall be commenced more than 13 years after the date the victim attains 18 years of age or more than three years after the date of a criminal conviction for

a crime described in subsection (b) related to such childhood sexual abuse, whichever occurs later." K.S.A. 2023 Supp. 60-523(a).

The district court noted that A.S. filed this action seven years after she turned 31 years old; therefore, the first option provided for in the amendment prohibited her suit from going forward. With respect to the second option, the district court concluded that because Bloom had not yet been criminally convicted of any offenses connected to the case, its terms left open the possibility for A.S. to pursue her claims at some point in the future. So, to the extent that development ever materialized, a pathway was available for A.S. to pursue her claim. But as Bloom points out in his brief, the likelihood of a criminal conviction for abuse that allegedly occurred over 20 years ago is quite low. Thus, retroactive application of the 2023 amendment has the practical effect of completely abolishing A.S.'s right to pursue her claims against the Defendants for the alleged abuse and, given the facts of her case, she was not left with a feasible alternative.

A measure of guidance can be drawn from *Norris*. There, following Norris' denial of unemployment benefits, he filed a motion to reconsider with the Kansas Employment Security Board of Review and a petition for judicial review with the district court. The district court dismissed Norris' petition as untimely, a decision that was later reversed by a panel of this court. After the Kansas Supreme Court granted the Board's petition for review, the Legislature amended the statute governing appeals from actions of the Board. The Board advocated for retroactive application of the amendment, an action that would result in the dismissal of Norris' claim as untimely. 303 Kan. at 834-35, 841.

The *Norris* court engaged in a vested rights analysis to answer the retroactivity question. It acknowledged the procedural nature of the amended provision but recognized that the practical effect of its retroactive application was the complete abrogation of Norris' substantive right. The court concluded that result was unlawful, and as such, the amendment could not be applied retroactively to Norris' case. 303 Kan. at 841-43.

24

As in *Norris*, retroactive application of the amendment here serves to wholly divest A.S. of the right to pursue her cause of action. While the possibility of a future criminal conviction against Bloom could conceivably open the door for A.S. to file her claims, where no criminal prosecution or even investigation is underway, we find that option is too tenuous at this juncture to afford A.S. any real avenue of relief. Thus, this second factor also counts in A.S.'s favor.

The final step of the analysis seeks an assessment of to what degree, if any, the public interest is furthered by the amendment to the statute of limitations. *Owen Lumber Co.*, 276 Kan. at 225. As the district court observed, the Legislature's preamble to this amendment notes that the intent of its passage was to "extend[] the time to file civil actions for recovery of damages caused by childhood sexual abuse." See L. 2023, ch. 28, Preamble. It is notable that the modifications at issue were accompanied by legislation that eliminated the statute of limitations for certain enumerated child sex offenses to allow for their criminal prosecution at any time. See L. 2023, ch. 28, § 1.

We find that the application of the amended statute of limitations to A.S.'s case produced a result that is the precise opposite of the goal the Legislature presumably set out to accomplish. Rather than expand the window of time available for A.S. to file her claims, the retroactive application of the modifications wholly eliminated her ability to move forward with her pending causes of action. Accordingly, while the public interest is arguably furthered by the prospective application of the amendment, its application here contravenes any perceived sentiment to hold offenders accountable for abusive conduct. This factor of the analysis is also more favorable to A.S.'s position.

Accordingly, application of the three-part vested rights test likewise reveals that under Kansas law, A.S. had a vested substantive right in her pending causes of action and the district court's retroactive application of the amended statute of limitations served to wholly abolish her ability to pursue those claims. That outcome undermines the

Legislature's expressed intent to ensure victims of childhood sexual abuse are afforded a significant period of time in which to bring their civil claims for damages arising out of such abuse. Accordingly, error occurred when the district court applied the modified statute of limitations to A.S.'s pending claims, found them to be untimely as a result, and granted the Defendants' motions for summary judgment.

Even if we adopted the Defendants' position that the right at issue is procedural rather than substantive, which we are not inclined to do, the analysis conducted by the Kansas Supreme Court in *Milbourne v. Kelley*, 93 Kan. 753, 145 P. 816 (1915), is instructive and likewise results in the outcome that retroactive application of the amended statute of limitations to bar A.S.'s claims is prohibited. In *Milbourne*, a question arose with respect to which statute of limitations applied when bringing claims against an estate. The original limitations period ran for three years from the issuance of the letters of administration. However, five months after the issuance of letters of administration in that case, but before any action was filed, the Legislature reduced the statute of limitations from three to two years. 93 Kan. at 754.

The *Milbourne* court determined that a new statute of limitations cannot extinguish causes of action which were viable on the date the new statute became effective. Rather, the Legislature must afford plaintiffs a reasonable amount of time to file causes of action which are not barred by the existing limitations period when a shorter period is enacted. 93 Kan. at 757-58. In so finding, the court cited *Shepard v. Gibson*, 88 Kan. 305, 306, 128 P. 371 (1912), to note that this "has been the rule followed in this state from the earliest decisions." *Milbourne*, 93 Kan. at 758.

That rule has been consistently applied in the years following the *Milbourne* decision. See *Admire Bank & Trust v. City of Emporia*, 250 Kan. 688, 697, 829 P.2d 578 (1992) ("'[T]he legislature has the power to shorten an existing statute of limitations, provided a reasonable time is given for a person having an existing cause of action to

commence an action before the bar takes effect.'"); *Stephens v. Snyder Clinic Ass'n*, 230 Kan. 115, 120, 631 P.2d 222 (1981) (same); *In re Estate of Reed*, 157 Kan. 602, 608, 142 P.2d 824 (1943) ("The doctrine that a legislature has power to enact a statute of similar character by shortening the time in which an existing cause of action may be barred, so long as a reasonable time is given for the commencement of an action or proceeding before the bar takes effect, is well recognized and unquestioned."); *State v. Benavides*, 46 Kan. App. 2d 563, Syl. ¶ 2, 263 P.3d 863 (2011) ("A reasonable time must be given after implementation of a statute of limitations for individuals to bring preexisting claims."); *Hayes v. State*, 34 Kan. App. 2d 157, Syl. ¶ 2, 115 P.3d 162 (2005) (same); *In re Estate of Forrester*, 13 Kan. App. 2d 98, 102-03, 762 P.2d 198 (1988) (recognized the *Milbourne* and *In re Estate of Reed* decisions but held plaintiff's action was time-barred because plaintiff still had three months to file under the new statute once it became effective, but failed to do so); *Wheeler v. Lenski*, 8 Kan. App. 2d 408, 411, 658 P.2d 1056 (1983) (recognized the same rule from *Milbourne*, but held that the action was barred under the amended statute of limitations because the plaintiff still had three years to file the action after the new statute took effect, but failed to do so).

Within this angle of analysis we find the Tenth Circuit's observation in *United States v. Simmonds*, 111 F.3d 737, 745 (10th Cir. 1997), *overruled on other grounds by United States v. Hurst*, 322 F.3d 1256, 1261 n.4 (10th Cir. 2003), particularly enlightening:

> "[A] new time limitation cannot be so unfairly applied to bar a suit before the claimant has had a reasonable opportunity to bring it. Indeed, the Supreme Court has explained:
>
> > "'It may be properly conceded that all statute of limitations must proceed on the idea that the party has full opportunity afforded him to try his right in the courts. A statute could not bar the existing rights of claimants without affording this opportunity; if it should attempt to do so, it would not be a statute of limitations, but an unlawful attempt to extinguish

> rights arbitrarily, whatever might be the purport of its provisions. It is essential that such statutes allow a reasonable time after they take effect for the commencement of suits upon existing causes of action. . . .'" *Simmonds*, 111 F.3d at 745 (quoting *Texaco, Inc. v. Short*, 454 U.S. 516, 527 n.21, 102 S. Ct. 781, 70 L. Ed. 2d 738 [1982]).

Given that application of the legislative amendment immediately extinguished A.S.'s preexisting right to file a claim against the Defendants, under *Milbourne* she was entitled to a reasonable opportunity to pursue her cause of action following the effective date of the amended provision. That is, her case would not be subject to automatic dismissal as the district court found here.

A.S. timely pursued a cause of action for damages arising out of sexual abuse she endured as a minor and, in so doing, established a vested right in those pending causes of action. Accordingly, when the Legislature amended the statute of limitations while A.S.'s litigation was actively pending, that amendment could not be retroactively applied to her case lest it unlawfully deprive her of that vested right. The district court's decision to the contrary was erroneous.

II. *Did the district court err in noting that the Defendants' initial summary judgment motions would be denied under the original statute of limitations?*

The Defendants filed two separate summary judgment motions. The first of those challenged A.S.'s claims as untimely under the original statute of limitations while the second was filed in response to the legislative amendment. The district court granted the second of those two motions only. With respect to the first, it found that the same relief was not available because a question of fact existed with respect to when A.S. discovered or should have discovered that her illnesses were related to the sexual abuse she suffered, as contemplated under the original statute of limitations. Bloom attempts to cross-appeal to challenge the district court's finding that the application of the original statute of

limitations would have required the denial of the Defendants' summary judgment motions.

> "Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions on file, and supporting affidavits show that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. The district court must resolve all facts and reasonable inferences drawn from the evidence in favor of the party against whom the ruling is sought. When opposing summary judgment, a party must produce evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issue in the case. Appellate courts apply the same rules and, where they find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment is inappropriate. Appellate review of the legal effect of undisputed facts is de novo. [Citation omitted.]" *GFTLenexa, LLC v. City of Lenexa*, 310 Kan. 976, 981-82, 453 P.3d 304 (2019).

Bloom first takes the position that, because A.S. only asserts claims for negligence, the two-year statute of limitations for negligence in K.S.A. 60-513(a)(4) applies. But this argument ignores the fact that A.S. alleges Bloom sexually abused her when she was under the age of 16, acts that place her claims squarely within the ambit of K.S.A. 2021 Supp. 60-523, as it is tailored specifically to actions for damages associated with childhood sexual abuse claims. See *Eastman v. Coffeyville Resources Refining & Marketing*, 295 Kan. 470, 478, 284 P.3d 1049 (2012) (noting that general statutes pertaining to limitations only apply when there is no specific statute speaking to limitations for the type of action at issue).

Bloom makes a similar argument that K.S.A. 60-515 bars this action. That statute requires minors seeking to file claims which accrued during their minority to do so within one year of turning 18 years old. It further provides that such actions cannot be commenced "more than eight years after the time of the act giving rise to the cause of action." K.S.A. 60-515(a). However, this argument is not persuasive as the plain language

of K.S.A. 60-515(a) explicitly exempts cases that arise under K.S.A. 60-523 which A.S.'s clearly does.

Finally, Bloom contends that this action is time-barred by K.S.A. 2021 Supp. 60-523 because A.S. knew or should have known she suffered an injury or illness as a result of childhood sexual abuse well before the fall of 2018, which A.S. identified as the trigger point for her awareness. As support, Bloom asserts such clarity would have manifested when A.S. received the letter from her mother that expressed concerns about the relationship, or when her friends staged an intervention to discuss the relationship with A.S., or when A.S.'s education and career path provided her with knowledge about the various long-term effects that victims of childhood sexual abuse might suffer. He additionally asserts that an objective standard applies under K.S.A. 2021 Supp. 60-523, so A.S.'s personal testimony may not be used to establish she discovered that her injury or illness was caused by childhood sexual abuse less than three years prior to filing suit.

First, the 2021 version of the statute of limitations explicitly states: "Discovery that the injury or illness was caused by childhood sexual abuse shall not be deemed to have occurred solely by virtue of the person's awareness, knowledge or memory of the acts of abuse." K.S.A. 2021 Supp. 60-523(c). Given this language, the Kansas Supreme Court has consistently recognized that "K.S.A. 60-523 defines 'discovery' broadly to mean not just awareness of the abuse, but an understanding that the sexual abuse *caused* the plaintiffs' injuries." (Emphasis added.) *Shirley*, 260 Kan. at 526; see *John Doe v. M.J.*, 315 Kan. at 315. A careful review of the record reveals factual variances in the parties' contentions as to exactly when A.S. knew or reasonably should have known that her illnesses were a product of Bloom's sexual abuse. Resolution of that key point necessitates greater factual development, assessment of witnesses' credibility, and weighing of the evidence—all matters that fall within the province of a jury. Accordingly, we are satisfied that the district court properly concluded that the Defendants would not have prevailed on their initial summary judgment motions.

Second, Kansas caselaw suggests that A.S.'s personal testimony is not prohibited. See *John Doe v. M.J.*, 315 Kan. at 319 (court relied on plaintiff's own testimony regarding his own subjective memories to determine if there were factual disputes over the discovery issue). No Kansas case has held that an objective standard applies to the discovery provision under K.S.A. 2021 Supp. 60-523, and Bloom's attempt to analogize A.S.'s case with legal analyses from other jurisdictions is not persuasive.

We share the district court's view that an unresolved factual dispute exists in this case with respect to when A.S. learned or should have learned that her varied psychological ailments were connected to the abuse Bloom perpetrated against her. The existence of this dispute would have required the denial of the Defendants' initial summary judgment motions.

CONCLUSION

The district court erred when it retroactively applied the 2023 legislative amendments to K.S.A. 60-523 to bar A.S.'s claims. The amended statute does not include language that clearly indicates the Legislature intended for its modifications to operate retroactively. Further, while the statutory change was procedural, A.S. had a vested right in the causes of action pending at the time the Legislature amended the statute of limitations for damages arising out of childhood sexual abuse claims. Accordingly, retroactive application of the statute was improper and did not provide a foundation for the district court to grant the Defendants' motions for summary judgment.

Further, when all facts and reasonable inferences drawn from the evidence are resolved in favor of A.S., as mandated by the governing standard of review, we, like the district court, are not persuaded that reasonable minds would unanimously agree that A.S. discovered or reasonably should have discovered that her illnesses were the product of the childhood abuse she suffered more than three years before she filed her petition for

31

damages. Rather, different conclusions may be drawn from the record, which ultimately raises a question of fact appropriately decided at trial. Accordingly, we agree with the district court that the Defendants would not have prevailed on summary judgment under the statute of limitations in effect when A.S. filed her cause of action.

The judgment of the district court is reversed, and the case is remanded for further proceedings.